In the
United States Court of Appeals
For the Seventh Circuit

Nos. 00-3130, 00-3149, 00-3150

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DAVID SCOTT, CARL BUCHHOLZ,
and GREGORY SUMPTER,

Defendants-Appellants.

Appeals from the United States District Court
for the Central District of Illinois, Springfield Division.
No. 99-CR-30014--Jeanne E. Scott, Judge.

ARGUED FEBRUARY 27, 2001--DECIDED October 4, 2001

Before COFFEY, RIPPLE and EVANS, Circuit
Judges.

RIPPLE, Circuit Judge.  A jury convicted
the defendants, David Scott, Carl
Buchholz and Gregory Sumpter, of
possession with intent to distribute
marijuana in violation of 21 U.S.C. sec.
841. Scott and Buchholz also were charged
with, and convicted of, carrying a
firearm during a drug trafficking
offense, in violation of 18 U.S.C. sec.
924(c). The defendants now appeal their
convictions on numerous grounds. For the
reasons set forth in the following
opinion, we affirm the judgments of the
district court.

I

BACKGROUND

A.  Facts

In the summer of 1996, Chad Little and
friends, Tommy Smith and David Scott,
discussed the difficulty of obtaining
marijuana in the St. Louis area. Little
agreed to contact a college friend who
might be able to assist them in procuring
marijuana for their own use and for
resale. Little's college friend,
unbeknownst to Little, was cooperating
with law enforcement agents and put

Little in touch with undercover officer Kelly Cain of the Drug Enforcement Administration. Little then engaged in ongoing negotiations with Cain to obtain up to 300 pounds of marijuana for redistribution in the St. Louis area.

To fund the venture, Little enlisted the assistance of Scott, Sumpter and Buchholz. For his part, Little contributed $500 and a motorcycle toward the purchase. The remainder of the purchase price was supplied by Scott ($500), Sumpter ($20,000) and Scott Carver ($3,000). Also, as part of thepurchase arrangements, Little, Scott and Buchholz were to carry firearms to protect both the collateral and the contraband. On May 6, 1997, Little, Scott, Buchholz and Sumpter traveled from St. Louis, to Lincoln, Illinois to purchase the marijuana. Upon arriving in Lincoln and presenting the money and other items, all were arrested.

After their arrest, both Buchholz and Sumpter made statements concerning the nature of the arrangement. Specifically, Buchholz stated that he had assisted Little in renting a trailer to transport Little's motorcycle and that he knew that Little was going to use the motorcycle as partial payment for a marijuana deal. Buchholz, however, did not indicate when he had learned that the motorcycle would be used to purchase marijuana. According to the interviewing officers' testimony, Buchholz also said that Little had told him that he (Buchholz) might be needed to drive Little's vehicle and that his role was to provide security.

Sumpter told the interviewing officers that Little had been talking about the marijuana deal for about a week, that the deal was for a few hundred pounds, and that the motorcycle and cash were to be traded for marijuana. Sumpter stated that his role was to inspect the marijuana. Although Sumpter was unsure of his compensation for these efforts, he understood that Little would "take care of him." Tr. 766.

All of the defendants subsequently were charged with possession with intent to distribute marijuana; Buchholz and Scott also were charged with carrying a firearm during a drug trafficking offense. Little pleaded guilty to the charge, as well as

federal money laundering charges pending in Missouri. The remaining defendants, Scott, Buchholz and Sumpter, pleaded not guilty and proceeded to trial.

## B. District Court Proceedings

### 1. Voir dire

It came to the attention of the district court that Juror 99 had expressed concern that the defendants had access to the information provided on the juror questionnaires. Counsel for the defendants requested that the court question Juror 99 about her comments, outside the presence of the other jurors. The district court granted the defendants' request. During the questioning, Juror 99 stated that she did not "think concern is the right word," but rather was curious as to "[w]hy the defendants were able to look through our questionnaires." Tr. 190. She further stated that the court had satisfied her concern or curiosity, and she believed that she could be fair and impartial.

Following the juror's questioning, counsel for the defense, who had exhausted their allotment of peremptory challenges, requested that the juror be removed for cause. The district court first intimated that it might grant the request if the defendants would agree to a trial by eleven as the jury pool had been exhausted. However, on reexamination, the district court determined that juror curiosity did not support a "for cause" challenge. Consequently, the court denied the request.

### 2. Witness testimony

During the trial, the key evidence was provided by Little and several drug enforcement agents. As a result, the primary defense strategy was to attack the credibility of Little and the agents to whom Buchholz and Sumpter had made their statements.

To counter the attacks on Little's credibility and the suggestions that he was biased in favor of the Government, the Government introduced the testimony of Special Agent William Scheitlin of the Internal Revenue Service concerning Little's cooperation in an unrelated drug and money laundering investigation in St.

Louis, Missouri ("the St. Louis case")./1 Special Agent Scheitlin testified, over objection, that Little had cooperated in the prior case and that, due in part to Little's cooperation, several persons were indicted and one of the main targets of the investigation had pleaded guilty to various criminal offenses. Immediately following Special Agent Scheitlin's testimony, the district court gave the following instruction:

Ladies and gentlemen of the jury, the testimony of this officer that as a result of Mr. Little's assistance certain individuals entered pleas of guilty in the Missouri investigation does not give any rise to any inference that these Defendants here on trial are guilty. [T]he testimony is merely admitted to substantiate some of what Mr. Little has testified to. Again, it does not give rise to any inference that these defendants are, in fact, guilty.

Tr. 724-25.

The defendants also mounted an attack on the credibility of the arresting officers. Specifically, the defense suggested that the substance of the statements allegedly made by Buchholz and Sumpter came from information that thearresting officers had received in an earlier briefing about the transaction, and that the statements were not the words of the defendants. The defense also focused on the officers' questioning methods, their motivation in failing to use audio or visual recording devices, and their intent in discarding their original notes after completing the final report.

3. Instructions

At the instruction conference, the defendants tendered Pattern Federal Jury Instruction for the Seventh Circuit 5.11 ("Pattern Instruction 5.11"). Pattern Instruction 5.11 states:

(a)

A defendant's presence at the scene of a crime and knowledge that a crime is being committed is not alone sufficient to establish the defendant's guilt.

[A defendant's association with conspirators [or persons involved in a criminal enterprise] is not by itself sufficient to prove his/her participation or membership in a conspiracy [criminal enterprise].]

(b)

If a defendant performed acts that advanced a criminal activity but had no knowledge that a crime was being committed or was about to be committed, those acts alone are not sufficient to establish the defendant's guilt.

Pattern Fed. Jury Instruction for the 7th Cir. 5.11. The court believed that either the first or second paragraph of (a) was appropriate, but not both. As a compromise position, the district court gave as its instruction the first paragraph of (a) and all of (b).

4. Closing arguments

Prior to closing argument, the Government sought permission from the district court to argue to the jury that Buchholz's and Sumpter's statements to law enforcement agents were confessions. The defendants objected, but the district court allowed the Government to make the argument to the jury. The defendants, stated the court, were free to argue the opposite. During closing arguments, therefore, the Government's attorney attempted to characterize the statements as confessions.

The Government also spent some time during closing argument addressing the defendants' attack on the credibility of Little and of the law enforcement officers who testified. With respect to the officers, the Government argued:

You can take--certainly take all three of the defense closings that you've heard today, lump them in to two areas: incessant reference to Mr. Little, and out and out perjury by four law enforcement officers who testified before you. Those are the two areas that have been referred to over and over and over and over again.

. . .

The clear implication from [Sumpter's

counsel's] closing, which has stemmed from the very beginning, from the opening, before any of these witnesses even testified, was that Inspector Eck and Officer Burke came in here, committed crimes by perjuring themselves.

Tr. 1322. The defense did not object to any of these statements.

The jury subsequently found the defendants guilty as charged on all counts.


II

DISCUSSION

A.  Testimony of Special Agent Scheitlin

On appeal, the defendants first argue that the district court allowed the Government to engage in impermissible "bolstering" of Little's testimony that deprived them of a fair trial. Specifically, the defendants' question the district court's admission of testimony by Special Agent Scheitlin concerning Little's cooperation in the St. Louis case; according to the agent's testimony, Little's testimony in the St. Louis case assisted in obtaining convictions and indictments against those involved. The district court found controlling this court's decision in United States v. Lindemann, 85 F.3d 1232 (7th Cir. 1996), and therefore overruled the defendants' objection to the testimony. We review the district court's admission of evidence for an abuse of discretion. See United States v. Gibson, 170 F.3d 673, 680 (7th Cir. 1999).

"'Bolstering' is the practice of offering evidence solely for the purpose of enhancing a witness's credibility before that credibility is attacked." Lindemann, 85 F.3d at 1242. This type of evidence is generally inadmissible because of the potential for increasing the length of trials and for dulling the intensity with which a jury will evaluate the underlying testimony. See id. The same is not true, however, of evidence offered to rehabilitate a witness after his credibility has been questioned. See id. at 1243. When a party has attacked a witness' credibility, rehabilitation evidence is admissible. Id.

In Lindemann, we addressed the operation of bolstering and rehabilitation as they apply to the testimony of a cooperating witness. There, Lindemann had suggested that a witness, Burns, "falsely implicated [Lindemann] to obtain a plea deal," that is, that Burns was biased in favor of the Government. Id. We held that, when the defense makes such an attack, "the government [is] entitled to introduce evidence to rehabilitate [the witness] on the issue." Id. Furthermore, because the Federal Rules of Evidence do not consider bias a collateral issue, we held that "it was permissible for evidence on this issue to be extrinsic in form." Id. The only limitations, therefore, on this type of testimony was the relevance standard set forth in Federal Rule of Evidence 402/2 and the prejudice standard set forth in Federal Rule of Evidence 403./3 Applying these standards to Burns' testimony, we stated:

Here we conclude that the admission of evidence regarding Burns' cooperation in other cases was relevant. The evidence specifically rebutted the allegation that Burns was biased out of self-interest in Lindemann's case: Burns' successful participation in numerous other cases meant that at the time he was negotiating over his plea deal, he had lots of information to use as bargaining chips. That fact was relevant under the standards of [Federal Rule of Evidence] 402 because it made less probable the assertion that Burns was lying in Lindemann's case out of self-interest. Finally, the district court immediately warned the jury that it was not to infer Lindemann's guilt from the fact that other indicted individuals had pleaded guilty. Thus the evidence was used only to assess Burns' credibility, not as evidence of Lindemann's guilt.

Id. at 1243-44.

In United States v. Curry, 187 F.3d 762 (7th Cir. 1999), we had another opportunity to address the admissibility of evidence concerning a witness' prior cooperative efforts. In Curry, as in Lindemann, the defense had attacked the credibility of a cooperating witness "by suggesting that she had falsely implicated [the defendant] in order to obtain a favorable plea agreement." Id.

at 766-67. In light of this attack, the Government "was permitted to explain to the jury" that the witness' testimony also had implicated another co-conspirator, who had pleaded guilty. Id. at 767. On appeal, we held that the district court's admission of the testimony and explanation was not an abuse of discretion. We stated that, when a cooperating witness' testimony "will help the Government obtain more than one conviction (through a guilty plea or otherwise),"

[t]hat is enough to create the multiple "chips" to which Lindemann referred. In addition, [the witness'] history of successful cooperation was relevant evidence under the standards of Federal Rule of Evidence 402 because the fact that she had cooperated against Pulley, who then pleaded guilty, made it more probable that she was telling the truth about Curry.

Id.

We believe Lindemann and Curry control the present case. Here, Little had information to provide the Government with respect to these defendants and to the defendants in the St. Louis case; consequently, Little had multiple "bargaining chips" to use in his plea negotiations. This fact, introduced through Special Agent Scheitlin, made it less probable that Little was lying out of self-interest against the defendants. See Lindemann, 85 F.3d at 1243. Because it made a fact in issue more or less probable, the evidence was relevant and, therefore, presumptively admissible under Federal Rule of Evidence 402. Furthermore, because the district court gave a cautionary instruction that focused the jury on Little's credibility as opposed to the defendants' guilt, there is a diminished chance that the evidence resulted in undue prejudice for the purposes of Federal Rule of Evidence 403. Because the evidence was relevant and because the district court took steps to minimize any unfair prejudice, we do not believe that the district court abused its discretion in admitting the evidence.

The defendants acknowledge the holdings of Lindemann and Curry but claim that they are distinguishable from the present

case on several grounds. First, the defendants state that in Lindemann the witness testified to his own prior cooperative efforts whereas here an agent was called to testify about Little's cooperation. "This is an important difference . . .," claim the defendants, "because the basis for allowing the testimony about other cooperation is related to the cooperating witness' state of mind." Appellants' Br. at 27. We do not believe that this is a material distinction. In Lindemann, we approved the use of "extrinsic" evidence to establish a witness' credibility after attack; we did not limit it to extrinsic evidence from the witness himself. Lindemann, 85 F.3d at 1243. Furthermore, other courts have approved the use of evidence other than a witness' own testimony to bolster a witness' credibility. See, e.g., United States v. Martinez, 775 F.2d 31, 38 (2d Cir. 1985) (approving the use of the witness' own testimony and letters from Government attorneys to bolster the witness' credibility after attack).

The defendants also attempt to distinguish Lindemann on the ground that Lindemann involved the cooperation of the witness in the investigation of the same scheme or conspiracy that led to charges against the defendant. Again, there is no basis in Lindemann or Curry for drawing this distinction. Those cases hold that the evidence of cooperation in other cases is relevant "because the witness's 'successful participation in numerous other cases meant that at the time he was negotiating over his plea deal he had lots of information to use as bargaining chips' and thus was less likely to be lying in [this particular] case out of self-interest." Curry, 187 F.3d at 767 (quoting Lindemann, 85 F.3d at 1243). The important aspect of those cases is that the defendant had multiple "bargaining chips" to use with the Government, not that the "chips" are related to the same case.

The defendants further urge that the evidence was not valuable because Little already had served his sentence in the St. Louis case, but had not been sentenced on the drug and firearm charges. Consequently, they maintain, there was nothing about his prior cooperation that made it less likely that

he was lying about the defendants. Again, Lindemann and Curry do not admit of such a distinction. In Lindemann, we stated that "Burns' successful participation in numerous other cases meant that at the time he was negotiating over his plea deal, he had lots of information to use as bargaining chips." Lindemann, 85 F.3d at 1243 (emphasis added). The operative time frame is when the deal is struck, not when the testimony is given. In the present action, Little agreed to cooperate in the St. Louis investigation at the same time he agreed to cooperate in the present case. Consequently, that Little had served his sentence in the St. Louis case at the time he testified is of no consequence in determining the admissibility of evidence to support his credibility./4

Because the evidence was admissible and not unduly prejudicial, we do not believe the district court abused its discretion in admitting Special Agent Scheitlin's testimony. However, even if we had reached the opposite conclusion, any error was harmless. Here, as in Curry, "[t]he evidence against [the defendants] was overwhelming, and there were a host of corroborating witnesses whose testimony would have helped the jury to evaluate [Little's] credibility." Curry, 187 F.3d at 767. Consequently, we find no reversible error in the district court's ruling.

B.  Instructional Error

The defendants next focus on alleged instructional error. In the district court, the defendants tendered PatternInstruction 5.11, which states:

(a)

A defendant's presence at the scene of a crime and knowledge that a crime is being committed is not alone sufficient to establish the defendant's guilt.

[A defendant's association with conspirators [or persons involved in a criminal enterprise] is not by itself sufficient to prove his/her participation or membership in a conspiracy [criminal enterprise].]

(b)

If a defendant performed acts that advanced a criminal activity but had no knowledge that a crime was being committed or was about to be committed, those acts alone are not sufficient to establish the defendant's guilt.

The district court did not believe that all of Pattern Instruction 5.11 was warranted. It therefore agreed to give the "mere presence" portion of paragraph (a) together with paragraph (b). The defendants' maintain, however, that the district court's failure to include the second paragraph of (a), the "mere association" instruction, deprived them of a fair trial.

With respect to a district court's duty to give a particular jury instruction, this court has stated:

It is the well-settled law of this Circuit that a defendant is entitled to a jury instruction on his or her particular theory of defense if: "(1) the instruction represents an accurate statement of the law; (2) the instruction reflects a theory that is supported by the evidence; (3) the instruction reflects a theory which is not already part of the charge; and (4) the failure to include the instruction would deny the appellant a fair trial."

United States v. Linwood, 142 F.3d 418, 422 (7th Cir. 1998) (quoting United States v. Edwards, 36 F.3d 639, 645 (7th Cir. 1994)). Although a district court's refusal to give an instruction on a theory of the defense is reviewed de novo, a district court has "'substantial discretion'" regarding "'the specific wording of the instructions, and in rejecting a proposed instruction, so long as the essential points are covered by the instructions given.'" United States v. Koster, 163 F.3d 1008, 1011 (7th Cir. 1998) (quoting United States v. Scott, 19 F.3d 1238, 1245 (7th Cir. 1994)).

Evaluating the instruction according to these standards, we find no misstep on the part of the district court. There is no question that paragraph two of Pattern Instruction 5.11(a) represents an accurate statement of the law. See, e.g., United States v. Percival, 756 F.2d 600, 610 (7th Cir. 1985) (reaffirming the proposition that "mere association" with

those involved in criminal activity is not enough to prove guilt). Furthermore, it is at least arguable that the instruction was warranted by the evidence, given that most of the defendants knew each other socially before planning the marijuana purchase./5 However, we do not believe that the defendants have established that "the instruction reflects a theory which is not already part of the charge" or that the failure to include the precise language of the instruction deprived them of a fair trial. Linwood, 142 F.3d at 422.

The "mere association" instruction is designed to inform the jury that guilt should not follow from one's association with those who commit crimes; guilt may only be found when the defendant knowingly participated in the criminal activity. In this case, the instructions adequately apprised the jury of this principle. The instructions given to the jury made it clear both that the defendants must have engaged in the conduct knowingly, and that the determination of knowing participation must be individual to each defendant. Specifically, the district court charged that the jury must find that "the defendants knowingly or intentionally attempted to possess the marijuana." R.91, Government's Inst. 22. "To 'attempt,'" the court continued, "means that the defendants knowingly took a substantial step toward the commission of the offense with the intent to commit that offense." Id., Government's Inst. 24. The aiding and abetting instruction also spoke to the knowledge requirement; it stated: "Any person who knowingly aids or abets the commission of a crime is guilty of that crime. However, that person must knowingly associate himself with the criminal venture, participate in it, and try to make it succeed." Id., Government's Inst. 31. "[K]nowingly," the jury was informed, meant that the "defendants realized what they were doing and were aware of the nature of theirconduct, and did not act through ignorance, mistake or accident." Id., Government's Inst. 28. Consequently, the court further instructed, "[i]f a defendant performed acts that advanced a criminal activity but had no knowledge that a crime was being committed or was about to be committed, those acts alone are not sufficient to establish the

defendant's guilt." Id., Defendant's (Scott) Inst. 1 (as modified).

The district court also took pains to ensure that each defendant's conduct was evaluated separately and that the acts of one were not imputed to the other. It informed the jury that it "must give separate consideration both to each count and to each defendant." Id., Government's Inst. 21. The court continued:

You must consider each count and the evidence relating to it separate and apart from every other count.

You should return a separate verdict as to each defendant and as to each count. Your verdict of guilty or not guilty of an offense charged in one count should not control your decision as to that defendant under any other count.

Id.

We believe that these instructions, taken together, accomplished the same function as the "mere association" instruction. They told the jury that it was not enough that the defendants were present at a crime scene or were unwitting participants in a criminal activity; they were guilty only if they each knowingly participated in some part of the criminal act./6

C.  Prosecutorial Misconduct

1.
The defendants next maintain that several of the Government's statements in closing arguments constituted prosecutorial misconduct that resulted in the defendants being denied a fair trial. The defendants believe that the Government's argument posed an improper alternative to the jury: In order to convict the defendants, the jury had to find that the investigating officers committed perjury. Specifically, the defendants point to two sections of the Government's closing argument, which states:

You can take--certainly take all three of the defense closings that you've heard today, lump them in to two areas: incessant reference to Mr. Little, and out and out perjury by four law enforcement officers who testified before

you. Those are the two areas that have been referred to over and over and over and over again.

. . .

The clear implication from [Sumpter's counsel's] closing, which has stemmed from the very beginning, from the opening, before any of these witnesses even testified, was that Inspector Eck and Officer Burke came in here, committed crimes by perjuring themselves.

Tr. 1322.

Usually, in reviewing improper comments by a prosecutor, this court undertakes a two-step inquiry. "[W]e first determine if the comments, looked at in isolation, were improper." United States v. Morgan, 113 F.3d 85, 89 (7th Cir. 1997) (citing United States v. Severson, 3 F.3d 1005, 1014 (7th Cir. 1993); United States v. Badger, 983 F.2d 1443, 1450 (7th Cir. 1993)). "If they are improper, we must then examine the record as a whole to determine if the comments deprived [the] defendant[s] of a fair trial." Id. In making this second determination, this court considers: "1.) the nature and seriousness of the misconduct; 2.) the extent to which the comments were invited by the defense; 3.) the extent to which any prejudice was ameliorated by the court's instruction to the jury; 4.) the defense's opportunity to counter any prejudice; and 5.) the weight of the evidence supporting the conviction." United States v. Amerson, 185 F.3d 676, 686 (7th Cir.) (citing United States v. Kelly, 991 F.2d 1308, 1315) (7th Cir. 1993)), cert. denied, 120 S. Ct. 549 (1999). However, when, as here, counsel has failed to object to the remarks at the time they were made, the plain error standard requires that the defendant "establish 'not only that the remarks denied him a fair trial, but also that the outcome of the proceedings would have been different absent the remarks.'" United States v. Durham, 211 F.3d 437, 442 (7th Cir. 2000) (quoting United States v. Granados, 142 F.3d 1016, 1022 (7th Cir. 1998)).

The defendants maintain that the Government's argument in this case is indistinguishable from the argument we found problematic in United States v.

Vargas, 583 F.2d 380 (7th Cir. 1978). In that case, the prosecutor argued that "these Federal agents have come in and testified under oath as to what they observed; and if you find the defendant not guilty, I want you to write on there that all of those people lied. Ricevuto is a liar. Garcia is a liar. Collins is a liar. Kowalski is a liar. Fanter is a liar." Id. at 387 (internal quotation marks omitted). The only other alternative, stated the Government, was a verdict of guilty. This court held that these statements constituted misconduct:

Even assuming that the testimony of the prosecution and defense witnesses contained unavoidable contradictions, it of course does not follow as a matter of law that in order to acquit Vargas the jury had to believe that the agents had lied. If the jurors believed that the agents probably were telling the truth and that Vargas probably was lying or even if the jury was convinced that all of the agents save Garcia were telling the truth and thought that Garcia probably was telling the truth it would have been proper to return a verdict of not guilty because the evidence might not be sufficient to convict [the] defendant beyond a reasonable doubt. To tell the jurors that they had to choose between the two stories was error.

Id.

We believe that the remarks made by the prosecution in this case are not equivalent to those made in Vargas. In the present case, the Government's attorney argued that "[t]he clear implication from [the defense] closing, . . . was that Inspector Eck and Officer Burke came in here, committed a crime by perjuring themselves," Tr. 1322, and that there were "suggestions" that the officers falsified the report and committed perjury, Tr. 1327-28. However, the prosecutor here stopped short of giving the jury the ultimatum presented to the jury in Vargas: The prosecutor did not tell the jury that, if they returned a verdict of not guilty, they had to conclude that the officers lied. This either/or proposition is what we found most troubling in Vargas. We commented that "[e]ven assuming that the testimony of the prosecution and defense witnesses contained unavoidable contradictions, it

of course does not follow as a matter of law that in order to acquit Vargas the jury had to believe that the agents had lied." Vargas, 583 F.2d at 387. Although the prosecutor here pointed out the "unavoidable contradictions," he did not state that "in order to acquit [the defendants] the jury had to believe that the agents had lied."

More recent cases have emphasized this distinction. In United States v. Cornett, 232 F.3d 570, 574 (7th Cir. 2000), we noted that "[w]e have revisited this issue several times since Vargas, distinguishing cases where the prosecutor did not explicitly argue that the jury must find a witness lied in order to acquit." Id. (citations omitted); see also United States v. Amerson, 185 F.3d 676, 687 (7th Cir. 1999) (stating that it was not improper for the prosecutor to comment that "[y]ou simply cannot believe the testimony of these police officers and believe the defendant's testimony at the same time" because the comments did not force the jury to decide between acquitting the defendant and believing the police officers); United States v. Marshall, 75 F.3d 1097, 1107-08 (7th Cir. 1996) (finding no impropriety when the prosecutor commented that the jury should acquit if it disbelieved an FBI agent because the prosecutor did not state that disbelieving the FBI agent was the only way to acquit); United States v. Hernandez, 865 F.2d 925, 929-30 (7th Cir. 1989) (same). Because the prosecutor did not link directly the allegations of perjury with a defense acquittal, we do not believe that the prosecutor engaged in any impropriety./7

2.

The defendants also claim prejudice from the Government's characterization of Sumpter's and Buchholz's statements as "confessions." Prior to his closing argument, the attorney for the Government requested that the district court allow him to argue that, pursuant to 18 U.S.C. sec. 3501,/8 the statements of Sumpter and Buchholz were confessions. The defendants objected, but the district court acceded in the Government's request with the understanding that the defendants could argue that the statements did not constitute confessions. The court also gave an

instruction directed to these statements. The court charged the jury:

You have received evidence of statements said to be made by defendants Sumpter and Buchholz to law enforcement officers. You must decide whether the defendants did in fact make the statements. If you find that the defendants did make the statements, then you must decide what weight, if any, you feel the statements deserve. In making this decision, you should consider all matters in evidence having to do with the statements, including those concerning the defendants themselves and the circumstances under which the statements were made.

R.91, Government's Inst. 12.

Relying on United States v. Morsley, 64 F.3d 907 (4th Cir. 1995), the defendants argue that the Government's characterization of these statements as confessions was prosecutorial misconduct that deprived them of a fair trial. In Morsley, the Fourth Circuit held that two statements made by the prosecutor in closing argument were improper: 1) that the defendant had pleaded guilty to one of the counts (when no evidence of the plea was before the jury) and 2) that the defendant had confessed to his involvement in the conspiracy. With respect to the confession, the court stated: "Although it is a closer question, we believe the prosecutor also acted improperly in referring to McKoy's statements to federal agents as a 'confession.' McKoy certainly admitted several aspects of his involvement in the conspiracy, but he did not formally 'confess' his guilt." Id. at 913. Despite its finding that the combination of these comments "reache[d] the limit of tolerable trial error," the Fourth Circuit held that the comments did not deprive the defendant of a fair trial. Id.

Even if we were to agree with our colleagues on the Fourth Circuit that the prosecutor's characterization of Buchholz's and Sumpter's statements constituted "tolerable trial error," it does not follow that the defendants were deprived of a fair trial. See Morgan, 113 F.3d at 89 (identifying two-step process for determining if prosecutorial misconduct resulted in prejudice). Using

the criteria set forth above, we do not believe that the comments of the prosecutor resulted in prejudice to the defendants. See Amerson, 185 F.3d at 686. The use of the word "confession" without more, as the defendants recognize, simply is not "serious" misconduct, if misconduct at all./9 See Appellants' Br. at 45 (stating that, arguably, "the use of the word 'confession'" by itself did not require reversal). The court also used the jury instructions as a means to ameliorate the effect of the characterization. The court gave an explicit instruction explaining to the jury how it should evaluate the statements. The court also cautioned against giving weight to the attorneys' arguments. It stated that "[c]ertain things are not evidence" including "the lawyers' statements." R.91, Government's Inst. 7. "The purpose of these statements," the court continued, "is to discuss the issues and the evidence. If the evidence as you remember it differs from what the lawyers said, your memory is what counts." Id. As well, the defense had at least some opportunity to respond to the characterization and to explain why the statements were not confessions. See Tr. 1271, 1318. Finally, the weight of the evidence supporting the conviction was strong. Consequently, assuming some error in the use of the term "confession," no prejudice resulted, and the jury's verdict will not be reversed.

D.   Jury Misconduct

   Finally, the defendants characterize Juror 99's "curiosity" as "bias against the Defendants," Appellants' Br. at 48, that undermines the validity of the jury's verdict. Because "'[t]he process of empaneling a jury is firmly entrusted to the sound discretion of the trial judge,'" we shall not disturb the district court's decision in this arena "'absent an abuse of this discretion.'" United States v. Beasley, 48 F.3d 262, 267 (7th Cir. 1995) (quoting United States v. Rubin, 37 F.3d 49, 54 (2d Cir. 1994)). We find none here.

   According to the juror's own statement, she had not meant to express concern, only curiosity. Upon further questioning by the court, she stated unequivocally that she could be fair and impartial. Given these responses and the district

court's superior vantage point to evaluate the juror's credibility in responding to its inquiries, we shall not second guess its determination that Juror 99 could faithfully execute her oath. Consequently, we shall not disturb the district court's decision to allow the empaneled jury to sit and render judgment. Cf. Thompson v. Altheimer & Gray, 248 F.3d 621, 626 (7th Cir. 2001) ("Had the judge pushed Leiter and had she finally given unequivocal assurances that he deemed credible, his ruling could not be disturbed.").

Conclusion

   For the reasons set forth above, the judgment of the district court is affirmed.

AFFIRMED

FOOTNOTES

/1 Little had agreed to cooperate with the investigation in St. Louis at the time he entered his agreement with the Government to cooperate in this matter. See Tr. 432-36.

/2 Federal Rule of Evidence 402 states: "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible."

   Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

/3 Federal Rule of Evidence 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

/4 The defendants also point to United States v. Cheska, 202 F.3d 947 (7th Cir. 2000), in support of their contention that the district court abused its discretion in admitting Special Agent Scheitlin's testimony. We cannot agree. Cheska did not involve the admission of evidence but instead involved prosecutorial misconduct that

stemmed from a comment that a witness "had convicted 23 other people" when evidence of the witness' prior cooperation had not been admitted into evidence. Cheska, 202 F.3d at 949. The district court found that the statement was objectively false and because the witness' testimony was critical to the Government's case, ordered a new trial based on the prosecutor's comment. At issue here is not the objectively false commentary of a prosecutor, without support in the record; we simply are presented with evidence offered by a Government agent concerning a witness' prior cooperation. Consequently, we believe Cheska is inapplicable to the facts as they are before us.

/5 The comment to 5.11 states that "[t]he bracketed paragraph in (a) may be used as additional or substitute language in cases involving charges of conspiracy, RICO or CCE." Furthermore, all of the cases that the defendants cite in support of their proposition that the instruction should be given are conspiracy cases. See Appellants' Br. at 31. No conspiracy was charged in the present case and, therefore, it is not clear that the omitted language is applicable to these defendants.

/6 Our conclusion also finds support in the commentary to Pattern Instruction 5.11. The Committee Comment to the instruction states: "As a general rule, (a) and (b) are alternative instructions. The bracketed paragraph in (a) may be used as additional or substitute language in cases involving charges of conspiracy, RICO or CCE." The comment to the proffered instruction, therefore, belies the defendants' suggestion that the instruction, as given, was inadequate because paragraphs (a) and (b) of 5.11 were designed to be given in the alternative, and not the conjunctive.

/7 Because we do not believe any prosecutorial misconduct occurred, it is unnecessary for us to engage in the second of the two-part inquiry-- whether prejudice occurred as a result of the misconduct.

/8 18 U.S.C. sec. 3501 defines "confession" to include "any self-incriminating statement made or given orally or in writing." Cf. Dickerson v. United States, 530 U.S. 428 (2000) (construing 18 U.S.C. sec. 3501 and holding that Miranda and its progeny govern the admissibility of statements made during custodial interrogation in both state and federal courts).

/9 See United States v. Goodlow, 105 F.3d 1203, 1207 (8th Cir. 1997) (stating that the court was "not entirely convinced that the prosecutor's charac-

terization" of the defendant's statements as a
confession "amounted to misconduct").