In the

# United States Court of Appeals

### For the Seventh Circuit

No. 01-2300

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

FILIMON SANDOVAL-GOMEZ,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 00-CR-92—**Barbara B. Crabb**, *Chief Judge.*

ARGUED FEBRUARY 22, 2002—DECIDED JULY 8, 2002

Before POSNER, KANNE, and ROVNER, *Circuit Judges.*

KANNE, *Circuit Judge.* Filimon Sandoval-Gomez, a Mexican national, was convicted of one count of illegally entering the United States after being deported without the permission of the Attorney General, following a conviction of an aggravated felony. *See* 8 U.S.C. § 1326. Sandoval-Gomez appeals his conviction and sentence, and we affirm.

## I. Background

Following a felony conviction and a deportation hearing, Sandoval-Gomez was deported to Mexico from Laredo, Texas. One month later, without first obtaining the permis-

sion of the Attorney General, Sandoval-Gomez reentered the United States. While reentering, Sandoval-Gomez twice presented immigration officials with an unexpired resident alien card, which the Immigration and Naturalization Service ("INS") had granted him prior to his felony conviction and which he had lawfully retained following his deportation. Over two years after his reentry, an officer with the Sun Prairie, Wisconsin, Police Department stopped Sandoval-Gomez for a traffic violation. Subsequently, a second officer, named Bertram, arrived on the scene to assist and telephoned the INS in Laredo, Texas to inquire about Sandoval-Gomez's immigration status. Because the INS delayed in responding to the inquiry, Sandoval-Gomez was allowed to leave. However, shortly thereafter, the INS contacted officer Bertram and informed him that Sandoval-Gomez should have been detained. The Sun Prairie police then located Sandoval-Gomez in the parking lot of a nearby apartment complex. Pursuant to the INS's instructions, the officers took Sandoval-Gomez into custody. While in custody, an INS agent, Ronald Rickey, interviewed Sandoval-Gomez. The interview was conducted mostly in Spanish.

In the district court, Sandoval-Gomez conceded that he never applied for permission to reenter the United States following his deportation, however, he asserted an affirmative defense. Under *United States v. Anton*, 683 F.2d 1011, 1018 (7th Cir. 1982), Sandoval-Gomez contended that he held an objectively reasonable belief that he had the permission of the Attorney General to return to the United States due to the fact that he had retained his unexpired resident alien card. Sandoval-Gomez further claimed that he told both officer Bertram and agent Rickey about his unexpired resident alien card and his consequent belief that he reentered the United States with permission.

On behalf of the government, officer Bertram testified that at no time did Sandoval-Gomez indicate to him that he believed he was in the United States legally. Additionally,

the officer testified that Sandoval-Gomez spoke English without difficulty. Agent Rickey testified that during his interview with Sandoval-Gomez, Sandoval-Gomez acknowledged that he knew he should not have returned to the United States, and that he had used his unexpired resident alien card to reenter following his deportation. The agent then stated that Sandoval-Gomez never indicated to him that he believed he had permission to return based upon his retention of his unexpired resident alien card. Additionally, the government produced evidence at trial that following his interview with the agent for the INS, Sandoval-Gomez voluntarily signed an INS Form I-871, which stated that Sandoval-Gomez had "illegally reentered the United States on or about June 1998 at or near Laredo, Texas." The agent testified that prior to asking Sandoval-Gomez to sign the INS Form I-871, he explained the form to Sandoval-Gomez in Spanish.

During closing arguments, the prosecution stated that defense counsel was asking the jury to believe that officer Bertram and agent Rickey lied about whether Sandoval-Gomez told them that he believed he had returned to the United States legally based upon his retention of his unexpired resident alien card. Further, by means of a comparison between Sandoval-Gomez and the prosecutor's family in South Georgia, the prosecutor challenged defense counsel's characterization of Sandoval-Gomez as unable to understand the consequences of his deportation due to a lack of experience and education. The prosecutor explained that even his family, who were farmers in South Georgia, would have understood that they were not free to return to the United States once deported.

Subsequently, the jury found Sandoval-Gomez guilty of unlawful reentry. At sentencing, Sandoval-Gomez asserted that he was entitled to a two-level downward adjustment for acceptance of responsibility pursuant to U.S.S.G.

§ 3E1.1, which provides that "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." Sandoval-Gomez argued that he had not challenged any of the factual elements of the government's case at trial, but rather, he contended that because he believed he had permission to reenter, he could not have violated 8 U.S.C. § 1326. The district court declined to grant the two-level downward adjustment. The district court explained that Sandoval-Gomez "did not qualify for a downward adjustment for acceptance of responsibility because [he] put the government to its burden at trial by denying the essential factual elements of guilt."

Sandoval-Gomez makes three arguments on appeal. First, he argues that there was insufficient evidence to support the jury's guilty verdict. Next, he contends that his sentence should be vacated based on his entitlement to a two-level reduction for acceptance of responsibility. Finally, he asserts that during closing arguments, the prosecutor made improper statements that constituted prosecutorial misconduct and denied him of his right to a fair trial.

## II. Analysis

In weighing the sufficiency of the evidence on appeal, this court will determine "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). At the time of Sandoval-Gomez's trial, to obtain a conviction under 8 U.S.C. § 1326, the government needed to prove that convicted felon Sandoval-Gomez was previously deported; that subsequently, he voluntarily reentered the country; and that he intended to reenter the country unlawfully. *See*

*United States v. Anton*, 683 F.2d 1011, 1016 (7th Cir. 1982).[1] Sandoval-Gomez contends that his conviction must be overturned because the government presented insufficient evidence to rebut his assertion that he reasonably believed that he reentered the United States with permission.

At trial, both officer Bertram and agent Rickey testified that Sandoval-Gomez never indicated that he believed he had permission to reenter the United States based on his retention of his unexpired resident alien card. Both government witnesses also stated that Sandoval-Gomez spoke English without difficulty. Moreover, agent Rickey testified that during his interview with Sandoval-Gomez, Sandoval-Gomez stated that he knew he should not have returned to the United States following his deportation. Additionally, Sandoval-Gomez signed the INS Form I-871, which stated that Sandoval-Gomez "illegally reentered the United States on or about June 1998." In light of this abundance of evidence, a rational trier of fact could have easily found in favor of the government and concluded that Sandoval-Gomez intended to reenter the United States without the Attorney General's express consent.

Next, Sandoval-Gomez claims that the district court erred when it failed to grant him a two-level sentence reduction for acceptance of responsibility. We review a sentencing court's acceptance of responsibility determination for clear error. *United States v. Williams*, 202 F.3d 959, 961 (7th Cir. 2000). In *Williams*, 202 F.3d at 962, we explained that

---

[1] Since Sandoval-Gomez's trial, the law in this Circuit has changed and the government is no longer required to prove that the defendant intended to reenter the United States unlawfully. *See United States v. Carlos-Colmenares,* 253 F.3d 276, 278-80 (7th Cir. 2001) (overruling *Anton*). Under either *Carlos-Colmenares* or *Anton*, Sandoval-Gomez's sufficiency of the evidence challenge fails.

"[o]rdinarily a defendant who chooses to go to trial and force the government to prove his guilt is not eligible to receive a sentence reduction for acceptance of responsibility." Here, Sandoval-Gomez asserted an affirmative defense at trial. As in *Williams*, he went to trial and forced the government to prove his guilt, thereby supporting the district court's conclusion.

Furthermore, allowing Sandoval-Gomez to receive a two-level reduction for acceptance of responsibility would defeat the purpose of the reduction. The purpose of the acceptance of responsibility reduction "is to reward those who plead guilty—saving the judiciary and Government from the time, expense and effort of trial—or who take some other equivalently concrete act, such as pretrial payment of full restitution." *United States v. Bonanno*, 146 F.3d 502, 512-13 (7th Cir. 1998) (quotations omitted). While the Sentencing Guidelines do contemplate situations where the acceptance of responsibility reduction might apply even though a defendant proceeded to trial, these situations are limited to instances where the defendant challenged something other than factual guilt, such as the constitutionality of the statute under which the defendant was being prosecuted. *See id.* at 513. Because we do not find any such exception applicable to the case at bar and because Sandoval-Gomez put the government to its burden of establishing his factual guilt at trial, we find that the district court did not clearly err in declining to grant Sandoval-Gomez the two-level reduction for acceptance of responsibility.

Finally, Sandoval-Gomez argues that reversal is required because the prosecutor made improper remarks during closing arguments, thereby preventing him from receiving a fair trial. Normally, when reviewing improper remarks made by a prosecutor, this court undertakes a two-step inquiry: first, we determine if the comments, looked at in isolation, were improper. *See United States v. Scott*, 267 F.3d 729, 740 (7th Cir. 2001). Second, if the comments were im-

proper, we look at the record as a whole to determine whether the comments deprived the defendant of a fair trial. *See id.* However, because Sandoval-Gomez did not object to the prosecutor's closing remarks at trial, we will review the allegedly improper statements for plain error. *See id.* The plain error standard requires that Sandoval-Gomez establish not only that the prosecutor's remarks were improper and that they denied him a fair trial, but also that the prosecutor's remarks prejudiced him; meaning that the outcome of the proceedings would have been different absent the remarks. *See id.*

We will first address the prosecutor's statement that defense counsel "is a dignified man and he's a man of certain . . . classic lawyerly spirit. He doesn't want to say Special Agent Rickey is a liar. Never called him a liar on the stand, but at the heart of it, he's asking you to believe that Special Agent Rickey got up on the stand and lied to you." This remark responded to Sandoval-Gomez's claim that he told agent Rickey about his reasonable belief that he reentered the country lawfully and that agent Rickey ignored him. Sandoval-Gomez argues that this remark tainted the jury's decision-making process because the prosecutor told the jury that its verdict rested on whether the government's witnesses were liars, instead of on the elements required for guilt.

In *United States v. Vargas*, we explained that a similar statement made by a prosecutor constituted misconduct if the prosecutor actually told the jury that they had to *choose between two alternatives. See* 583 F.2d 380, 387 (7th Cir. 1978) (finding misconduct where prosecutor told jury that they had to choose between finding that four federal agents lied on the stand or that the defendant was guilty). Subsequently, in *Scott*, we clarified *Vargas* and explained that such remarks do not constitute misconduct when the prosecutor "stop[s] short of giving the jury [an] ultimatum . . . ." 267 F.3d at 741. In *Scott*, "the prosecutor did not link

directly the allegations of perjury with a defense acquittal, [and therefore,] we [did] not believe that the prosecutor engaged in any impropriety." *Id.* In other words, the prosecutor did not tell the jury to acquit only if it found that the government's witness lied. *See id.* Similarly, in the case at bar, the prosecutor's comment did not directly link the allegation of perjury with a defense acquittal. The prosecutor in this case did not say to the jury that in order to acquit Sandoval-Gomez, it must believe that agent Rickey lied on the stand. Thus, we conclude that the prosecutor's remark was not improper. *See id.*

Second, Sandoval-Gomez claims that the prosecutor's comparison between him and the prosecutor's family during his closing argument denied him a fair trial. Specifically, the prosecutor stated:

> [M]y folks in South Georgia are farmers and they could pretty much understand if you go to a deportation hearing and they tell you to get out of the country, they get you from Atlanta to Loredo, march you across, take your photograph, take your fingerprints, have you sign a Warrant of Deportation, even my folks from South Georgia could figure out, son, you have been deported. You have been deported. You can't turn around and come back in this country.

This comparison was made in direct response to defense counsel's suggestion that Sandoval-Gomez, a former goat herder, was not able to understand the consequences of his deportation, and thus thought that he had permission to reenter the United States. Even if we assume that the prosecutor's remark was improper, we simply cannot conclude that this statement denied Sandoval-Gomez a fair trial. When examining whether a defendant was denied a fair trial, we consider: "(1) the nature and seriousness of the misconduct; (2) the extent to which the comments were invited by the defense; (3) the extent to which any prejudice

was ameliorated by the court's instruction to the jury; (4) the defense's opportunity to counter any prejudice; and (5) the weight of the evidence supporting the conviction." *Id.* at 740. While we recognize that there was no instruction given by the judge with regard to this remark, we believe that the weight of the evidence against Sandoval-Gomez strongly supports his conviction and greatly outweighs the other factors relevant to this analysis. It is undisputed that Sandoval-Gomez was previously convicted of a felony; that he was deported; and that he voluntarily reentered the country without the permission of the Attorney General. Finally, under plain error review, we firmly believe that the outcome of this trial would have been no different absent the prosecutor's remark.

### III.  Conclusion

For the foregoing reasons, we AFFIRM Sandoval-Gomez's conviction and sentence.

A true Copy:

　　　　Teste:

　　　　　　　　　　_____
　　　　　　　　　　*Clerk of the United States Court of*
　　　　　　　　　　*Appeals for the Seventh Circuit*

USCA-97-C-006—7-8-02