In the

# United States Court of Appeals

### For the Seventh Circuit

No. 01-4349

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DWIGHT A. GRAHAM,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 01-CR-20025—**Jeanne E. Scott**, *Judge.*

ARGUED NOVEMBER 8, 2002—DECIDED JANUARY 8, 2003

Before POSNER, ROVNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* A jury found Dwight A. Graham guilty of distributing 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii). On appeal, Graham challenges the sufficiency of the evidence, statements made by the prosecutor during closing arguments, and the district court's consideration of his prior conviction in sentencing him to a mandatory minimum sentence of twenty years' imprisonment. For the following reasons, we affirm the district court's judgment and uphold Graham's conviction and sentence.

## I.  BACKGROUND

On March 8, 2001, a federal grand jury indicted Graham for distributing 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii). The indictment concerned an August 24, 2000, drug transaction between Graham and Joe Rapier, a confidential source working with the Vermilion County Metropolitan Enforcement Group ("VMEG"), a multi-jurisdictional drug task force. Because Graham challenges the sufficiency of the evidence supporting his conviction, we review the evidence introduced at trial.

### A.  Evidence presented during trial

Rapier and Graham were familiar with one another and had engaged in drug transactions in the past. Rapier agreed to cooperate with law enforcement after he was apprehended while purchasing and selling crack cocaine. Late on the evening of August 23, 2000, VMEG agents outfitted Rapier with several electronic surveillance devices, including a digital cassette recorder to tape his conversations with Graham and a radio frequency transmitter to permit the agents to monitor his interactions with Graham. Shortly past midnight on August 24, 2000, Rapier phoned Graham and asked to purchase two ounces of crack cocaine. Graham told Rapier to meet him at Garfield Park, where several agents followed Rapier to maintain audio monitoring and visual contact.

The two conversed in Garfield Park for several minutes, during which time Rapier repeated his request for two ounces of cocaine, and Graham told Rapier to meet him at his uncle's house nearby. Rapier proceeded to Graham's uncle's house, followed by VMEG agents. He waited there for between 15 and 20 minutes, calling Graham in the meantime to inquire when he would arrive.

Upon arriving, Graham entered his uncle's house and then returned to Rapier, handing him two ounces of crack cocaine in exchange for $1,800. During the tape-recorded conversation, Rapier commented on the high quality of the crack cocaine and attempted to bargain on the purchase price. Graham told Rapier that he would soon "be hollering at me," meaning that Rapier would enjoy the drugs so much that he would purchase more from Graham. He also instructed Rapier to keep Graham's drug dealing a secret.

When the two parted, agents followed Graham's vehicle, a 1970 Cadillac coupe with distinctive lights in the tailfins, to a nearby gas station, where they recorded the car's license plate. The agents testified that an investigation of the Cadillac's license plate number revealed that Graham had purchased the vehicle in February 2000 for $3,000 cash. A separate group of agents met Rapier at a designated location and confiscated the crack cocaine he had obtained from Graham. Illinois State Police forensic officers determined that the substance contained cocaine base and weighed 56.5 grams.

At trial the jury heard the tape-recorded interactions as well as testimony from law enforcement personnel who followed Rapier throughout the evening. Rapier and law enforcement officials testified that the second voice heard on the tape recordings presented was Graham's, while several of Graham's relatives attested that they could not recognize the voice. The jury also heard evidence that calls made to Rapier's cell phone were placed from a cell phone registered to Graham's fiancee. While registered to his fiancee, the cell phone's call patterns closely resembled Graham's work schedule.

Graham presented alibi evidence that after leaving work at 11:30 p.m. on August 23, 2000, he and Terrence Parker, his coworker and friend, drove ten minutes to a

local liquor store. Graham and Parker, driving in a 1970 Cadillac coupe, proceeded to the home of Graham's fiancee, Sheila Walker. Walker testified that the two stayed at her house for only about ten minutes. Graham and Parker claimed that they left Walker's home at approximately 12:30 a.m., and then drove twenty minutes to Parker's house, where they socialized until 2 a.m. Graham asserted that he was never in or near Garfield Park on the evening of August 23 and the morning of August 24, 2000. He also claimed that he was never in the gas station where law enforcement personnel claimed to have observed his vehicle and recorded his license plates. Graham further attacked Rapier's credibility. Finally, he denied using Walker's cell phone that evening.

The jury convicted Graham following a three-day trial. In his post-trial motion, Graham alleged that the government failed to meet its burden in proving his guilt beyond a reasonable doubt and that the prosecutor had made improper statements during closing arguments. In a written order, the district court found that "[c]learly there was evidence upon which the jury could have reasonably relied in finding the Defendant guilty beyond a reasonable doubt" and that the prosecutor's remarks were not improper.

B. Sentencing

Because Graham had a prior drug-related felony conviction and his current offense involved greater than 50 grams of crack cocaine, he was subject to a mandatory minimum sentence of twenty years' imprisonment and a maximum of life imprisonment. Graham argued unsuccessfully at sentencing that his prior state court felony conviction could not be used in his sentencing because he had been admitted to "first offender probation" under Illinois state law. The district court sentenced Graham to

the minimum 240 months' imprisonment, ten years' super-vised release, and a $100 special assessment.

## II. ANALYSIS

A. Sufficiency of the evidence

Graham argues that the government failed to carry its burden at trial of proving his guilt beyond a reasonable doubt. A party challenging the sufficiency of the evidence supporting a jury conviction faces a steep uphill battle. *See United States v. Moore*, 115 F.3d 1348, 1363 (7th Cir. 1999) (describing defendant's burden as "nearly insurmountable"); *United States v. Gillespie*, 974 F.2d 796, 805 (7th Cir. 1992) (observing that "a defendant making a sufficiency challenge bears a heavy burden"). He may prevail only if, viewing the evidence in the light most favorable to the government and deferring to the jury's credibility determinations, the record contains no evidence from which the jury could find guilt beyond a reasonable doubt. *Moore*, 115 F.3d at 1363. We will uphold the verdict when any juror could rationally have found the crime's essential elements were met beyond a reasonable doubt. *Gillespie*, 974 F.2d at 805.

To convict Graham, the government had to establish two elements: (1) that he knowingly distributed 50 grams or more of a mixture or substance containing cocaine base and (2) that he knew that what he was distributing was a controlled substance. 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii). We agree with the district court that there was evidence upon which jurors reasonably could conclude that Graham was guilty beyond a reasonable doubt. That evidence included a tape recording of the transaction between Graham and Rapier and records from Graham's fiancee's cell phone showing conversations with Rapier. Witnesses for the government identified the voice on the tape as Graham's, while witnesses for the defense tes-

tified that they could not recognize the voice. Law enforcement officials testified that they observed Graham's vehicle, a 1970 Cadillac coupe with distinctive tailfin lights, at the scene of the transaction. Furthermore, the tape recording demonstrated that Rapier and Graham decided that the actual transaction would occur at the home of Graham's uncle. This court cannot second-guess the jury's determination of which witnesses were credible and which were not. *United States v. Griffin*, 194 F.3d 808, 817 (7th Cir. 1999) (citing *United States v. Alcantar*, 83 F.3d 185, 189 (7th Cir. 1996)). Therefore, we affirm the district court's finding that the evidence was sufficient to support the jury's verdict.

B.  Prosecutor's statements during closing arguments

Graham also challenges two statements made by the prosecutor during closing arguments, asserting that the remarks deprived him of a fair trial. This court follows a two-step analysis in determining whether statements made during closing arguments constitute prosecutorial misconduct. *United States v. Butler*, 71 F.3d 243, 254 (7th Cir. 1995). First, we examine the disputed remarks to determine whether they were proper. *Id.* If the statements were proper, then our study ends. *Id.* If the statements were improper, we examine them in light of the entire record to see if they deprived the defendant of a fair trial. *Id.* In this second portion of the analysis, we consider: (1) the nature and seriousness of the misconduct; (2) the extent to which the comments were invited by the defense; (3) the extent to which any prejudice was ameliorated by the court's instruction to the jury; (4) the defense's opportunity to counter any prejudice; and (5) the weight of the evidence supporting the conviction. *United States v. Scott*, 267 F.3d 729, 740 (7th Cir. 2001) (citing *United States v. Amerson*, 185 F.3d 676, 686 (7th Cir. 1999)).

In the first challenged statement, the prosecutor referred to the car observed in the August 24, 2000, drug transaction as "Defendant's Cadillac."[1] As Graham did not object to this statement at trial, we review for plain error. *See United States v. Sandoval-Gomez*, 295 F.3d 757, 762 (7th Cir. 2002); *Scott*, 267 F.3d at 741. Under this standard, Graham must demonstrate not only that the prosecutor's remarks were improper and deprived him of a fair trial, but that they also prejudiced him, *i.e.*, that the trial's outcome would have been different had the remarks not been made. *See Sandoval-Gomez*, 295 F.3d at 762.

Graham cannot meet the plain error standard because the prosecutor's statement was not improper. A prosecutor may argue reasonable inferences from the evidence that the jury heard. *United States v. Adeniji*, 221 F.3d 1020, 1029-30 (7th Cir. 2000); *United States v. Ward*, 211 F.3d 356, 365 (7th Cir. 2000). The license plate number of the Cadillac showed that Graham had purchased the vehicle. Walker, Parker, and Graham himself admitted that he had been driving the car on the morning of August 24, 2000. Thus it is reasonable to infer that the Cadillac was Graham's. As such, the prosecutor's statement describing the vehicle as "Defendant's Cadillac" was not improper.

The prosecutor's second statement addressed challenges by Graham to Rapier's credibility.[2] The prosecutor argued

---

[1] The prosecutor argued in closing that "Agent Johnson followed that Cadillac, the Defendant's Cadillac, and was able to obtain—he radioed in the license plate number."

[2] The prosecutor stated: "And remember this; as defense counsel will certainly attack Mr. Rapier; it was the Defendant, not the Government, who really chose Mr. Rapier as a witness in this case. As Agent Shanks testified why they use confidential sources; because criminals deal with criminals. And in this case it took

(continued...)

that it was Graham who had chosen Rapier as a witness by selling drugs to him. Because "criminals deal with criminals," the prosecutor contended, confidential sources used by law enforcement officers tend to have criminal histories. Graham did object to this statement at trial, so we review the issue for abuse of discretion. *United States v. Knox*, 68 F.3d 990, 1000 (7th Cir. 1995). When placed in the context of the closing argument, the prosecutor's comment did not imply that Graham forced Rapier to testify; rather, the prosecutor was emphasizing that by selling drugs to Rapier, Graham had selected the government's witness. The comment did not improperly portray the burden of proof.

Even if this statement was improper, Graham cannot establish that it deprived him of a fair trial. The district court remedied any prejudice caused by the statement with a curative instruction to the jury, explaining that "Defendant had no obligation to present any evidence . . . it would have been his constitutional right to remain silent." Moreover, Graham had an opportunity to address the prosecutor's statement in his own closing argument. As discussed previously, the evidence supporting the conviction was substantial. For these reasons, we conclude that the prosecutor's statement did not deprive Graham of a fair trial.

C. Consideration of Graham's prior conviction in sentencing

Finally, Graham argues that the district court erred when it considered his prior drug conviction in determin-

---

[2] (...continued)
a Joe Rapier or someone like him to purchase drugs from the Defendant, a person who the Defendant would sell to."

ing the mandatory minimum sentence of twenty years' imprisonment and maximum of life imprisonment. Section 841(b)(1)(B) provides enhanced penalties for offenders with one or more prior convictions for drug-related felonies. 21 U.S.C. § 841(b)(1)(B). Graham was found guilty of felony possession of a controlled substance in 1994, and an Illinois court sentenced him to two years' probation under 720 Ill. Comp. Stat. 570/410. His probation was discharged in March 1997. The district court applied this prior conviction under § 841(b)(1)(B) in sentencing Graham.

Federal law, not state law, defines what is considered a conviction for the purposes of § 841(b)(1)(B). *United States v. Gomez*, 24 F.3d 924, 930 (7th Cir. 1994). Under federal law, a sentence of probation received according to 720 Ill. Comp. Stat. 570/410 constitutes a conviction. *United States v. McAllister*, 29 F.3d 1180, 1185 (7th Cir. 1994). Furthermore, the Supreme Court made clear in *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103 (1983), that expunction does not alter or remove the existence of a prior conviction. *Id.* at 115. Thus, the fact that Graham received probation that was later discharged does not alter the fact that he possesses a prior drug-related felony conviction qualifying him for the enhancement under § 841(b)(1)(B).

Graham urges this court to overrule *Dickerson*. Contrary to the assertions of Graham's counsel during oral argument, our reluctance to overturn *Dickerson* comes not from a lack of courage. We cannot simply overturn the United States Supreme Court; rather, it is our obligation as an intermediate appellate court to follow Supreme Court precedent. *United States v. Jackson*, 836 F.2d 324, 327 (7th Cir. 1987) (citing *United States v. Bush*, 820 F.2d 858, 861-62 (7th Cir. 1987)); *United States ex rel. Link v. Lane*, 811 F.2d 1166, 1170 (7th Cir. 1987). We therefore reject Graham's argument and hold that the dis-

trict court did not err in considering his 1994 possession offense a prior conviction for sentencing purposes under § 841(b)(1)(B).

## III.  CONCLUSION

For the reasons stated above, we affirm the judgment of the district court.

AFFIRMED.

A true Copy:

       Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*