**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Vetta LINWOOD, Defendant–Appellant.**

**No. 97–1771.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 10, 1997.

Decided April 20, 1998.

Colin S. Bruce (argued), Office of the United States Attorney, Urbana, IL, K. Tate Chambers, Office of the United States Attorney, Peoria, IL, for Plaintiff–Appellee.

George F. Taseff (argued), Office of the Federal Public Defender, Peoria, IL, for Defendant–Appellant.

Before BAUER, COFFEY and EASTERBROOK, Circuit Judges.

COFFEY, Circuit Judge.

The defendant-appellant, Vetta Linwood, was convicted by a jury of possessing cocaine base ("crack") with intent to distribute, as well as employing a minor to possess the same with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 861(a)(1), respectively. She filed a motion for a new trial, alleging that the trial judge erroneously rejected her tendered "mere presence" jury instruction and admitted hearsay testimony into evidence. The court denied that motion and sentenced her to seventy months' imprisonment, followed by eight years of supervised release. Linwood appeals. We affirm.

## I. BACKGROUND

In early February 1996, Detective Thomas Yentes of the Peoria (Illinois) Sheriff's Department was investigating a robbery at the Peoria County airport. Apparently, one Allen Church, an admitted drug user and convicted felon, was suspected of having committed the crime. Detective Yentes contacted Church and requested that he come to the Department for questioning; Church acquiesced. While the specific details of their meeting are somewhat unclear, and perhaps irrelevant for purposes of this appeal, it is uncontroverted that Church left the Detective's office with an agreement that he would act as a drug informant for the Department.

A few days later, on February 14, 1996, Detective Yentes gave Church sixty dollars and requested that he make a controlled crack cocaine "buy" in Linwood's apartment, located at 2108 West Howell Street in Peoria.[1] Church entered the apartment while Yentes sat waiting outside in a vehicle, and returned from the premises several minutes later with two "rocks of crack" in hand.[2] As a result of this "buy," a search warrant was issued and executed at Linwood's residence some two hours thereafter. Detective Yentes and Detective Troy Burns, also of the Peoria Sheriff's Department, approached the apartment and knocked on the front door. Backing them up were Detective Steve Schmidt, as well as a number of police officers from the Department. Someone peered out at them through a front window, but hurried away without opening the door. Since the officers were unable to peaceably gain entry, it necessitated that they use force

---

1. Forty of the dollars was to go towards purchasing drugs, and the remaining twenty to settling a prior debt Church owed to Linwood.

2. Church was strip-searched both immediately before and after he conducted the buy.

to do so, and at this time they identified themselves, announced that they possessed a search warrant for the premises, and broke through the door. Once inside the apartment, they came upon Linwood's twelve-year-old daughter, Lavesta, in the company of Linwood's sister and niece. The officers were informed that the defendant was not at home as she had briefly stepped out to have her hair coifed.

Detective Schmidt initially spoke with Lavesta in an attempt to calm her nerves and explain why he and his fellow officers were there. He then asked if she knew whether any drugs were on the premises. Lavesta replied that her mother sold drugs, and proceeded to lead the officers outside the apartment to a crevice in the building's foundation wherein a bag containing 58 rocks of crack weighing 7.6 grams was stashed. Asked how she knew the drugs were there, Lavesta replied that, earlier that day, her mother instructed her to retrieve the cocaine from the "hole" in the foundation and return it to the same place after several minutes had passed. This approximated the time frame during which Church purchased crack from Linwood.

The defendant Linwood arrived at the residence moments later. Detective Schmidt handcuffed her and administered *Miranda* warnings. He then advised the defendant why law enforcement officials were searching her home, recounted what Lavesta said to him about her, the defendant's, drug dealing out of the apartment, and explained how Lavesta had directed he and his fellow officers to the cocaine base stashed away in the foundation of the building. Linwood emphatically denied that she sold drugs, and instead insisted that the crack belonged to her live-in boyfriend, Robert Carter. She began to pound her fists and yell at Lavesta about how she was not a cocaine dealer. Intimidated and tears streaming from her eyes, Lavesta changed her statement, albeit only momentarily, in an attempt to appease her mother. The officers subsequently arrested Linwood and transported her to the Sheriff's Department, where she was once again read her *Miranda* rights. Upon being questioned further by Detective Yentes, the defendant reiterated that "she did not sell drugs. The drugs belonged to her boyfriend, Robert Carter who lives with her. He brings in approximately a half ounce every other day. He does sell it at the residence but she does not sell drugs." Lavesta continued to talk to the police outside the presence of her mother. She reaffirmed her original statement that the defendant dealt in crack and employed her to retrieve the drugs earlier that day.

Linwood was charged in a two-count indictment with possessing crack cocaine with intent to distribute, as well as employing a minor to possess the same with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 861(a)(1). The Government produced seven witnesses at trial-Lavesta, a forensic scientist, a policeman familiar with the methods of crack trafficking in Peoria, as well as four of the officers who participated in executing the search on the defendant's home, Detective Yentes, Lieutenant Briggs, Detective Schmidt and Detective Burns. Yentes, Briggs and Schmidt testified as to Lavesta's statement that her mother, the defendant, sold drugs, and explained how the defendant reacted to the statement by pounding her fists and yelling at Lavesta in an intimidating manner. Detective Burns, who had the responsibility of collecting evidence seized during the search, attested that Lavesta had told him that "the dope money was found—was usually kept in a purple Crown Royal bag on her mother's dresser." The officers' statements were admitted over Linwood's objection on hearsay and lack of confrontation grounds. Finally, Lavesta took the stand. She testified, among other things, about how her mother had instructed her to retrieve the crack cocaine from the crevice in the foundation of the apartment building on the morning of February 14, 1996, as well as how the defendant reacted that day in the face of her statement to the officers that she, the defendant, was a drug dealer. At the instruction conference, Linwood's attorney tendered a "mere presence" instruction, which was rejected over his objection. The jury eventually returned a guilty verdict on each of the counts in the indictment.

Linwood filed a motion for a new trial on grounds that the trial judge erred in rejecting her tendered "mere presence" instruction and admitting the alleged hearsay testimony of Detective Yentes, Lieutenant Briggs, Detective Schmidt and Detective Burns into evidence. The court denied the motion and sentenced her to seventy months' imprisonment, followed by eight years of supervised release.

## II. ISSUES

Linwood's appeal presents us with the same two issues she raised in her motion for a new trial. Initially, she argues that the district court erred in rejecting her tendered "mere presence" jury instruction. And second, she contends that the trial judge abused his discretion by admitting in evidence certain in-court statements of Lieutenant Briggs and Detectives Yentes, Burns and Schmidt which, although relevant for non-hearsay purposes, were more likely than not considered by the jury for the truth of the matter asserted, thereby prejudicing her.

## III. DISCUSSION

■ As noted above, this appeal comes to us on denial of Linwood's motion for a new trial made pursuant to Rule 33 of the Federal Rules of Criminal Procedure, a determination we review for an abuse of discretion. *United States v. Reed*, 875 F.2d 107, 113 (7th Cir.1989) (quoting *United States v. Davis*, 604 F.2d 474, 484 (7th Cir.1979)). "Because the trial judge is in a better position than we to evaluate such a motion—he heard the witnesses and lawyers and watched the jurors as they listened to the evidence—the standard of appellate review is ... a highly deferential one." *United States v. Morales*, 902 F.2d 604, 605 (7th Cir.1990). Indeed, the exercise of power conferred by Rule 33 is reserved for only the most "extreme cases." *Id.* at 606. With this in mind, we turn to consider the two principal issues before us.

### A. *"Mere Presence" Jury Instruction*

■ It is the well-settled law of this Circuit that a defendant is entitled to a jury instruction on his or her particular theory of defense if: "(1) the instruction represents an accurate statement of the law; (2) the instruction reflects a theory that is supported by the evidence; (3) the instruction reflects a theory which is not already part of the charge; and (4) the failure to include the instruction would deny the appellant a fair trial." *United States v. Edwards*, 36 F.3d 639, 645 (7th Cir.1994) (citing *United States v. Boykins*, 9 F.3d 1278, 1285 (7th Cir.1993)). Linwood contends that the "mere presence" jury instruction she proffered to the trial court satisfied this four-part test, and as such, the judge committed an abuse of discretion in rejecting it. Before deciding if her argument has any merit, we must consider whether the issue is preserved for appeal.

■ "To preserve an issue for appellate review, a party must make a proper objection at trial that alerts the court and opposing party to the specific grounds for the objection." *United States v. Wynn*, 845 F.2d 1439, 1442 (7th Cir.1988) (citing *United States v. Laughlin*, 772 F.2d 1382, 1391–92 (7th Cir.1985)). Thus, not just any objection will save an issue for review—neither a general objection to the evidence nor a specific objection on a ground other than the one advanced on appeal is enough. *Id.* (citing *Laughlin*, 772 F.2d at 1392). Rather, this Court will consider an argument only if the party asserting it made a proper, timely and specific objection on the same ground at trial, that is, unless "plain error" is manifest. *See Lieberman v. Washington*, 128 F.3d 1085, 1095 (citing *United States v. Whaley*, 830 F.2d 1469, 1478 (7th Cir.1987)). The plain error doctrine allows us "to correct only 'particularly egregious errors' for the purpose of preventing a miscarriage of justice[,] ... which implies the conviction of one who but for the error would have been acquitted." *Whaley*, 830 F.2d at 1476 (citations and internal quotations omitted). This is an exceedingly deferential review, and one under which we will reverse in only the most exceptional of circumstances. *See Lieberman*, 128 F.3d at 1095.

■ In the case *sub judice*, the parties met with the trial judge at the close of the evidence for an instruction conference. At this time, Linwood's counsel tendered his

"Instruction No. 4," referred to as a "mere presence" instruction, which provided that "[p]resence at the scene of the crime and knowledge that a crime is being committed are not sufficient to establish the defendant's guilt." *See* Seventh Circuit Pattern Instruction No. 3.04. The following colloquy then took place:

THE COURT: [Defendant's Instruction No.] 4?

MR. TASEFF [Linwood's Attorney]: Government objects.

MR. MURPHY [Government Attorney]: No, the Government doesn't.

MR. TASEFF: You don't. It was my understanding from talking with Mr. Murphy this morning that they may pose an objection to Defense Instruction No. 4.

MR. MURPHY: I am sorry, I put in the wrong notation. We are going to object to that particular one, sorry. And our objection is this. We have—if it's found to be credible, Your Honor, eyewitness testimony that puts her in actual possession of this bag of drugs. This isn't a situation where defendant can argue that she's just standing around knowing something is happening, watching criminality go by. It's simply not appropriate, we submit, in this particular case.

THE COURT: The Court agrees. The Court will refuse Defendant's Instruction No. 4. Keep it for the record. Defendant's Instruction No. 5?

Once the conference came to an end, defense counsel finally took it upon himself to air his blanket objection to every ruling in which the district judge rejected one of the defendant's proposed instructions: [3]

MR. TASEFF: Judge, I too in an abundance of caution wish to reflect for the record our objection to those instructions the defense tendered that the Court refused.... There are some recent Seventh Circuit cases that I read to say if I don't make objections I am waiving those issues on appeal.

THE COURT: Very well.

Unfortunately for Linwood, her attorney's observation during conference regarding the waiver doctrine in this Circuit is only partially correct. As stated above, a party must make a timely and specific objection at trial to any·matter he or she wishes to preserve for appellate review. Being that the defendant took issue with the court's rejection of her proposed "mere presence" instruction well before the jury retired to consider its verdict, we do not question the timeliness of her objection. *See* Fed.R.Crim.P. 30 ("No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating succinctly the matter to which that party objects and the grounds of the objection."). However, even a timely objection will not suffice if it lacks specificity. *See United States v. Douglas*, 818 F.2d 1317, 1320 (7th Cir.1987) (explaining that defense counsel must "object, on the record, to the judge's refusal to tender the defendant's instructions, and must clearly state the reasons for his or her objections") (citation omitted); *Lieberman*, 128 F.3d at 1095. This is where Linwood's argument falls short. Her counsel failed to articulate with specificity what she objected to in the court's ruling on Instruction No. 4, much less the reason why she believed that determina-

---

**3.** The judge refused to give two of Linwood's proposed instructions—the "mere presence" instruction and another which appears to have dealt with the introduction of prior inconsistent statements. The following excerpt from the record reveals that defense counsel in effect admitted that this latter instruction was inappropriate, since no inconsistent statements were elicited at trial:

THE COURT: Defendant's instruction No. 10. The defendant is not withdrawing it so does the Government object to it?
* * *
MR. MURPHY: My recollection on that.... [S]he [Lavesta] said that she didn't remember

any specifics, then defendant rested his case without presenting that there ever was an inconsistent statement. So the state of the record right now does not show an inconsistent statement.

THE COURT: Did you want to argue for that?
MR. TASEFF: Well, she said she doesn't remember. Just a moment, Judge. Judge, she testified in fact consistently with response to my question about statements made to her by the police....
THE COURT: All right. The Court would refuse defendant's instruction No. 10.

tion was erroneous. *See United States v. Kehm*, 799 F.2d 354, 362–63 (7th Cir.1986) ("The objection must point to something particular in the instruction and identify what, particularly, is wrong, and why; nothing else alerts the judge to what is at stake."). Linwood's plea to "give my instruction," without more, failed to identify either the language at issue or the reasons why the judge's ruling was mistaken. *See id.* at 363 (citing *United States v. Markowski*, 772 F.2d 358, 362–63 (7th Cir.1985)). Being that "[t]he function of the objection is to avoid avoidable mistakes at trial," *id.*, Linwood's general objection was ineffectual, and left the judge to speculate how he might have been able to remedy his alleged mistake before instructing the jury. We are thus left with the question as to whether the court's rejection of the defendant's "mere presence" instruction was plain error under Fed.R.Crim.P. 52(b).

In our view, there is no such "plain error" herein, much less any error for that matter. First, the evidence in the record does not support a "mere presence" instruction—all of the testimony adduced at trial suggests that Linwood played an active role in the sale and distribution of crack out of her apartment. In fact, Linwood's daughter testified that the drugs belonged to both her mother and her mother's boyfriend, and that the defendant had instructed her to retrieve the cocaine from the "hole" in the foundation and return it to that place earlier in the day of the police search, that is, about the time Church made his "buy" at the residence. And second, the jury was amply instructed that the Government had to prove more than Linwood's presence at the scene of a crime and knowledge that a crime was being committed in order to obtain a conviction. Indeed, one of the Government's various theories was that the defendant was an aider-and-abetter in violating 21 U.S.C. §§ 841(a)(1) and 861(a)(1). And aiding and abetting, by its very nature, requires proof that the actor engaged in some type of overt act (i.e., that he or she was more than just a disinterested observer of a crime). *See United States v. Valencia*, 907 F.2d 671, 680 (7th Cir.1990) ("To prove a defendant guilty of aiding and abetting, the prosecution must show that the defendant in some sort associated himself with the venture, that he participated in it as in something he wished to bring about, and that he sought by his action to make it succeed.") (citations, internal quotations and alterations omitted). Not only was the jury instructed in terms consistent with this principle, but it was also read an instruction strikingly similar to the one Linwood now claims should have been given:

> Any person who knowingly aids, abets, counsels, commands, induces or procures the commission of a crime is guilty of that crime. However, that person must knowingly associate herself with the criminal venture, participate in it, and try to make it succeed.
>
> Mere association with others who are involved in criminal activity is not sufficient to prove the defendant's guilt for the alleged offense.

(Def. Inst. No. 14 and Govt. Inst. No. 21). In brief, it would be a stretch to characterize the court's refusal to give Linwood's "mere presence" instruction as erroneous, much less "plainly erroneous."

### B. *Introduction of Alleged Hearsay Statements Into Evidence*

Linwood next contends that the court committed an abuse of discretion by allowing in evidence the testimony of Detective Yentes, Lieutenant Briggs, Detective Schmidt and Detective Burns regarding Lavesta's statements as to her, Linwood's, involvement in drug dealing. More specifically, she asserts that such testimony, while admittedly relevant for non-hearsay purposes, was more likely than not used by the jury for the truth of the matter asserted, resulting in significant prejudice to her. Once again, insofar as we are to accord significant deference to the evidentiary rulings of the trial courts within our jurisdiction, the district judge's determinations shall stand undisturbed unless no reasonable person could have taken his or her view on them. *See United States v. Akinrinade*, 61 F.3d 1279, 1282 (7th Cir.1995).

Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the

truth of the matter asserted. Fed.R.Evid. 801(c). Whether a statement is hearsay and, in turn, inadmissible, will most often hinge on the purpose for which it is offered. " 'If ... an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, *but without reference to the truth of the matter asserted,* the hearsay rule does not apply.' " *Lee v. McCaughtry*, 892 F.2d 1318, 1324 (7th Cir.1990) (emphasis in original) (quoting 6 J.H. Wigmore, Evidence § 1766, at 250 (1976)). In this case, Detective Yentes, Lieutenant Briggs and Detective Schmidt each testified, over objection, to the effect that Lavesta told them that her mother, the defendant, sold drugs out of their apartment *not to prove the truth of the matter asserted, but to establish why the defendant reacted as she did upon hearing the statement.* The case law of this Circuit leaves no doubt that this is a non-hearsay purpose. *See, e.g., United States v. Sanchez,* 32 F.3d 1002, 1005 (7th Cir.1994) ("The testimony at issue here was not offered to prove the truth of the matter asserted, but only to prove why Hepp [a police detective who made a controlled drug delivery] acted as he did [in making the delivery]. It was not hearsay, and it was not error for the district court to admit it."). Detective Burns then gave his account of what led up to his discovery of Linwood's "dope money." He explained that Lavesta, the defendant's daughter, told him that "the dope money was found—was usually kept in a purple Crown Royal bag on her mother's dresser." Linwood's counsel once more objected on hearsay and denial of confrontation grounds. The judge overruled the objection, stating:

> This is one of those close calls. Members of the jury, I am not admitting this testimony to prove that this young lady told him that. It's a fine line. But I'm permitting you to hear it because it provides the

background that led up to his finding some money. So if you are able to make that distinction in your minds. Go ahead.

Offering testimony to establish background facts leading up to a sequence of events is likewise an ostensibly non-hearsay use of evidence. *See, e.g., Akinrinade,* 61 F.3d at 1283. Linwood does not seem to contest that the Government proffered legitimate, non-hearsay grounds for admitting the officers' statements.[4] Rather, she claims that the real reason for their testimony, and the purpose for which the jury actually considered it, was to prove up the truth of the matter asserted (i.e., that Linwood, in fact, sold drugs).

■■■■ Linwood's argument is readily assailable. Every statement that is made by someone other than the declarant while testifying at trial could, in theory, be used for the truth of the matter asserted. The fact of the matter, however, is that not every *potentially* hearsay statement is inadmissible, for there will often be a non-hearsay use for it. *See United States v. Mazza,* 792 F.2d 1210, 1215 (1st Cir.1986). So long as the judge is convinced that the potential prejudicial effect of the jury considering testimony for a hearsay purpose does not substantially outweigh the probativity of the testimony's intended non-hearsay use, *see* Fed.R.Evid. 403, it is within his broad discretion to admit the evidence into the record, provided that a limiting instruction is given upon request. *See* Fed. R.Evid. 105 ("When evidence which is admissible ... for one purpose but is not admissible ... for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."); *see also United States v. Lovelace,* 123 F.3d 650, 653 (7th Cir.1997) ("A chameleon-like factor reviewing courts look to in assessing potential prejudice is the existence of a curative instruction. Potentially

---

4. Linwood concedes in her brief that there was an "ostensibly non-hearsay purpose of allowing Detective Yentes, Lieutenant Briggs and Detective Schmidt to testify that [she] sold drugs out of her house," (Appellant's Br., at 22), but that because the jury was "likely to consider the statement[s] for the truth of what was stated," (*id.* at 21–22) (quoting *United States v. Forrester,* 60 F.3d 52, 59 (2d Cir.1995)), the "ostensibly non-hearsay purpose ... shows that it was not valid."

(*Id.* at 22). Thus, when we state that the defendant does not challenge the legitimacy of the non-hearsay purposes for which the Government offered the testimony, we mean that she agrees that a statement, other than one made by the declarant testifying at trial, may be used as non-hearsay evidence for the limited purposes of establishing background facts or showing why one reacted as one did upon hearing the statement.

determinative, *it is the court's direction that distinguishes [non-hearsay] ... from hearsay for the jury."*) (emphasis added) (citations omitted). Juries may not be familiar with the hearsay rule, but the law assumes that they can and do follow the limiting instructions issued to them. "The Court presumes that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instruction given them." *Francis v. Franklin,* 471 U.S. 307, 324 n. 9, 105 S.Ct. 1965, 1976 n. 9, 85 L.Ed.2d 344 (1985); *see also United States v. Moore,* 115 F.3d 1348, 1358 (7th Cir.1997). "[T]his presumption is only overcome if there is an 'overwhelming probability' that the jury was unable to follow the instruction as given." *Doe v. Johnson,* 52 F.3d 1448, 1458 (7th Cir.1995) (citing *United States v. Beverly,* 913 F.2d 337, 354 (7th Cir.1990), *aff'd sub nom. Griffin v. United States,* 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991)). Here, the judge repeatedly and clearly instructed the jury as to the non-hearsay purpose for which they could consider the officers' testimony; Linwood does not suggest that the jury members were somehow incapable of heeding the instruction. Moreover, the declarant, Lavesta, was present for thorough cross-examination at trial and testified under oath to what Detective Yentes, Lieutenant Briggs, Detective Schmidt and Detective Burns had stated that she said to them on the day of the search. As such, the reasons for excluding hearsay evidence, assuming for the sake of argument that there was any in this case, do not come into play.

> We exclude out-of-court statements as hearsay for several reasons. First, the declarant, that is the person who made the statement, rather than the intermediary who relates it, was not under oath when he made the statement. Second, the declarant is not present at trial. His absence deprives the trier-of-fact of the opportunity to assess the declarant's demeanor and credibility. Third, the declarant is not subject to cross-examination. Indeed, in criminal cases, the denial of the defendant's right to test the declarant's statements in the crucible of cross-examination rises to constitutional magnitude.

*United States v. Norwood,* 798 F.2d 1094, 1097 n. 4 (7th Cir.1986) (citations omitted). If Linwood's attorney was as concerned at trial as he is now about hearsay evidence being received into the record, he had every opportunity while cross-examining Lavesta to question her regarding the Crown Royal bag and what she had said to the officers about her mother's involvement in drug dealing, but he did not do so. In any event, because Lavesta testified and the statements are admissible as non-hearsay, there is consequently no confrontation clause problem. *See Martinez v. McCaughtry,* 951 F.2d 130, 133 (7th Cir.1991) (citing *Tennessee v. Street,* 471 U.S. 409, 414, 105 S.Ct. 2078, 2081–82, 2081–82 (1985)). We do note that by limiting the use of the testimony to the non-hearsay purposes for which it was introduced raises relevancy questions. It was not necessary for the jury to know *why* the officers seized the velvet bag or *why* the defendant became angry at Lavesta. But Linwood failed to make a relevancy objection to the disputed evidence at trial, nor does she press this as a ground for reversal on appeal, and we are not about to deviate from "[t]he rule that points not argued will not be considered ...; its observance, at least in the vast majority of cases, distinguishes our adversary system from the inquisitorial one." *United States v. Burke,* 504 U.S. 229, 246, 112 S.Ct. 1867, 1877, 119 L.Ed.2d 34 (1992) (Scalia, J., concurring) (citation omitted). For these reasons, we refuse to hold that the district judge erred in exercising his discretion and admitting the challenged statements into evidence.

## IV. CONCLUSION

We agree with the trial court's ruling in denying Linwood's motion for a new trial. The defendant was not entitled to her tendered "mere presence" jury instruction, and the judge's decision to admit the officers' testimony as to what Lavesta told them about her mother's drug dealing was well within his discretion.

AFFIRMED.