# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 03-1691, 03-1692, & 03-2196

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

WALTER BRELAND, KATREL THOMAS,
and ANDRE VAUGHN,

*Defendants-Appellants.*

_____

Appeals from the United States District Court
for the Southern District of Indiana, Evansville Division.
No. EV 02-CR-0005-Y/H—**Richard L. Young**, *Judge.*

_____

ARGUED DECEMBER 5, 2003—DECIDED JANUARY 30, 2004

_____

Before FLAUM, *Chief Judge*, and MANION and WILLIAMS,
*Circuit Judges.*

WILLIAMS, *Circuit Judge.* Walter Breland, Katrel
Thomas, and Andre Vaughn appeal convictions stemming
from their drug distribution activities. Breland challenges
the introduction of testimony containing out-of-court state-
ments and the admission of the drugs, money, and weapon
seized during his arrest. Thomas and Vaughn challenge the
introduction and use of wiretap evidence and the district
court's sentencing determination regarding the quantity of
drugs for relevant conduct. Thomas also challenges the
district court's use of one of his prior convictions at sentenc-

ing. Because we find no error with respect to any of defendants' arguments, we affirm.

## ANALYSIS

### A. Walter Breland

In October 2001, Evansville police officers were conducting surveillance of a residence where they suspected drug dealing was taking place. In the early hours of October 31, 2001, one officer, Philip Luecke, stopped and questioned Trent Ferguson, a known drug trafficker, and found over $1,000 on his person. When Officer Luecke interviewed him, Ferguson stated that a "black male with a bald head" was selling cocaine and marijuana from the same residence that the officers had under surveillance. When Officer Luecke and two other officers spotted Walter Breland, a black male with a bald head, standing in front of the residence, Officer Luecke said to him, "Police, I want to talk to you." Breland immediately ran from the porch area of the residence, across the street and between some houses, where he hid behind a large bush. When Officer Luecke began to pursue Breland, he rose, tossed a plastic bag containing cocaine over a fence, and charged Officer Luecke brandishing a firearm. Officer Luecke struck Breland with a flashlight, which caused Breland to drop the gun, but Breland continued to run from the police. He was caught and arrested minutes later by other officers who conducted a search incident to the arrest and found $2,000.

Breland was charged with conspiracy to possess with intent to distribute and possession with the intent to distribute, carrying a firearm during and in furtherance of a drug trafficking offense, and being a felon in possession of a firearm. He was convicted on all counts except the conspiracy charge. On appeal, he challenges the admission of the evidence seized during his arrest and the introduction of Officer Luecke's testimony about Ferguson's statement.

1.   Suppression of the Arrest Evidence

Breland appeals the district court's admission of the drugs, money, and firearm seized at the time of his arrest. He argues that the evidence should have been suppressed because the police seized him within the curtilage of his home and did so without reasonable suspicion or probable cause. When reviewing appeals from denials of motions to suppress, we review legal issues de novo and questions of fact for clear error. *United States v. Quintanilla*, 218 F.3d 674, 677 (7th Cir. 2000). We disagree with Breland's assertions and find his argument to be without merit.

First, when Officer Luecke initially addressed Breland while Breland was on or near his front porch by saying "Police, I want to talk to you," Breland was not seized; if anything, Officer Luecke was *attempting* to engage in a consensual encounter (remember, Breland immediately started to run). *See United States v. Mendenhall*, 446 U.S. 544, 552-54 (1980); *United States v. Felix-Felix*, 275 F.3d 627, 632 (7th Cir. 2001). Even if Officer Luecke's actions could be considered an attempted *Terry* stop,[1] because Breland matched Ferguson's description of a person who

---

[1] *See Terry v. Ohio*, 392 U.S. 1 (1968). In *Terry*, the Supreme Court held that an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. 392 U.S. at 30. "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). "The officer must be able to articulate more than an 'inchoate and unparticularized suspicion or "hunch"' of criminal activity." *Id.* at 123-24 (quoting *Terry*, 392 U.S. at 27).

was allegedly dealing drugs from the residence where Breland was seen by police, the officers had reasonable suspicion to believe Breland was engaged in criminal activity and were entitled to conduct a *Terry* stop to briefly investigate. *See Illinois v. Wardlow*, 528 U.S. 119, 123-24 (2000); *Felix-Felix*, 275 F.3d at 634. Once Breland fled from the police, the officers undoubtedly had reasonable suspicion to pursue Breland in order to conduct a *Terry* stop. *Wardlow*, 528 U.S. at 124. Finally, after Breland threw the bag of drugs over the fence, and charged Officer Luecke with a firearm in his hand, the police had probable cause to arrest him and search his person. *See United States v. Feliciano*, 45 F.3d 1070, 1072-73 (7th Cir. 1995). Therefore, the district court did not err in denying Breland's motion to suppress the evidence seized at his arrest.

2.   Admission of Out-of-Court Statement

Breland also appeals the introduction of Officer Luecke's testimony concerning his conversation with Ferguson, in which Officer Luecke relayed that Ferguson told him about a "black male with a bald head" dealing drugs from the residence under surveillance. Breland argues that this testimony was inadmissible hearsay that should have been excluded at trial, and, alternatively, claims error in the district court's failure to give a limiting instruction regarding the jury's permissible use of the statement.

"Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted." *United States v. Linwood*, 142 F.3d 418, 424-25 (7th Cir. 1998) (citing Fed. R. Evid. 801(c)). "Whether a statement is hearsay and, in turn, inadmissible, will most often hinge on the purpose for which it is offered." *Id.* " 'If . . . an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted,

but without reference to the truth of the matter asserted, the hearsay rule does not apply.'" *Lee v. McCaughtry*, 892 F.2d 1318, 1324 (7th Cir. 1990) (emphasis omitted) (quoting 6 J. H. WIGMORE, EVIDENCE § 1766, at 250 (1976)). We review district court rulings on hearsay objections for an abuse of discretion. *United States v. Amerson*, 185 F.3d 676, 681 (7th Cir. 1999).

This court has repeatedly upheld the introduction of out-of-court statements when offered as background information to put an officer's actions in context because they are not being offered for the truth of the matter asserted. *See United States v. Linwood*, 142 F.3d at 424-25; *United States v. Sanchez*, 32 F.3d 1002, 1005 (7th Cir. 1994); *United States v. Martinez*, 939 F.2d 412, 415 (7th Cir. 1991). Here, Officer Luecke's testimony about Ferguson's statement was not offered to prove the truth of the matter asserted—that a "black male with a bald head . . . [was] selling cocaine and marijuana" from the relevant residence—but rather was offered to explain why Officer Luecke approached Breland since he was standing outside of the residence and matched Ferguson's description. "The case law of this Circuit leaves no doubt that this is a non- hearsay purpose." *Linwood*, 142 F.3d at 425 (citing *Sanchez*, 32 F.3d at 1005).

With respect to Breland's challenge regarding the necessity of a limiting instruction, Breland's defense counsel never actually requested an instruction at trial, nor did she submit a proposed instruction on this issue or otherwise object to the district court's final instructions.[2] Therefore,

---

[2] Defendants' brief claims that defense counsel requested a cautionary or limiting instruction and that the district court erred in refusing to give such an instruction. Defense counsel conceded at oral argument, however, that she never formally requested a lim-
(continued...)

plain error review applies. *United States v. Irorere*, 228 F.3d 816, 825 (7th Cir. 2000); *Linwood*, 142 F.3d at 422. Because there was substantial evidence to support Breland's conviction for possession with intent to distribute—namely, the quantity of drugs seized at his arrest[3] coupled with the amount of money found on his person— the district court's failure to provide a limiting instruction regarding the jury's permissible use of Ferguson's statement did not amount to plain error.[4]

B.   Katrel Thomas and Andre Vaughn

Around the same time as the Evansville Police were conducting surveillance on Breland's residence, the Drug Enforcement Agency (DEA) became interested in a certain cellular telephone number that was subscribed to by Breland. On October 26, 2001, the district court granted the government's application to conduct wiretap surveillance of communications involving that phone number. The wiretap surveillance ultimately revealed evidence which incrimi-

[2]  (...continued)
iting instruction at trial and did not propose a limiting instruction at the instruction conference.

[3]  "Intent to distribute can be inferred from the possession of a quantity of drugs larger than needed for personal use." *United States v. Maholias*, 985 F.2d 869, 879 (7th Cir. 1993); *see also United States v. Turner*, 93 F.3d 276, 288 (7th Cir. 1996).

[4]  As a practical matter, district judges would be well served to ask defense counsel if they would like the court to give a cautionary or limiting instruction whenever evidence is admitted for a limited purpose. Counsel can preserve objections to admissibility while still agreeing to a limiting instruction. Whether counsel wants a limiting instruction given is, of course, a matter of trial strategy.

nated Katrel Thomas and Andre Vaughn. They were charged and convicted of conspiracy to possess with intent to distribute and possession with the intent to distribute. Before the district court and now on appeal, defendants challenge the introduction and use of the wiretap evidence and the district court's sentencing determination regarding the quantity of drugs for relevant conduct. Thomas also challenges the district court's use at sentencing of one of his prior convictions.

### 1.  Suppression of the Wiretap Surveillance Evidence

In approving the government's application to conduct wiretap surveillance, the district court exercised its discretion to require the government to submit progress reports to the court detailing its progress and need for further surveillance.[5] The district court's order required the government to submit progress reports "on or about the tenth, twentieth, and thirtieth days following the Date of this Order . . . showing what progress has been made toward achievement of the authorized objectives and the need for continued interception." The government's wiretap surveillance ran from October 26 until November 14, with the last recorded phone calls on November 10. The government filed

---

[5] When a district court authorizes wiretap surveillance, the court's order

> may require reports to be made to the judge who issued the order showing what progress has been made toward achievement of the authorized objective and the need for continued interception. Such reports shall be made at such intervals as the judge may require.

18 U.S.C. § 2518(6). This court has held that requiring a progress report for continued surveillance is within the discretion of the district court. *In re DeMonte*, 674 F.2d 1169, 1174 (7th Cir. 1982).

its tenth day progress report on November 5, the tenth day after the district court's October 26 order.[6] The government never filed a report on the twentieth day after the district court's order, November 15, because it discontinued the wiretap surveillance on November 14 and filed a sealing application with the district court on that day.

Thomas and Vaughn argued that the government was required to file its twentieth day report on November 14 and its failure to do so violated both the court's order and the statutory requirement that "[s]uch reports *shall* be made at such intervals as the judge may require." Therefore, defendants asserted, suppression of the wiretap evidence was required. The district court found the government sufficiently complied with the court's order, given its discontinuation of the wiretap surveillance and filing of a sealing application, and rejected defendants' motion to suppress.

We review a district court's decision to admit evidence obtained from wiretap surveillance for an abuse of discretion. *United States v. Ceballos*, 302 F.3d 679, 683 (7th Cir. 2002). Putting aside the date controversy,[7] the district court had discretion to require the progress reports in the first

---

[6] The report covered the first ten days of surveillance from October 26 through November 4.

[7] Despite quoting the district court's order in their brief, defendants proceeded to mischaracterize the order both in their brief and at oral argument. Contrary to defendants' assertion, the district court's order did not require that a progress report be filed "on the 20th day" of surveillance (which would be November 14 if surveillance started, as it appears it did, shortly after the court issued the authorization order on October 26). Rather, the order required the report to be filed "*on or about* . . . the twentieth day[ ] . . . *following* the Date of this Order." (Emphasis added.) So if a "twentieth day" report was due at all, it was due on or about November 15, the twentieth day following the date of the order.

place, *In re DeMonte*, 674 F.2d 1169, 1174 (7th Cir. 1982), and to find that a twentieth day report was not necessary in light of the government's sealing application which indicated that the wiretap surveillance had been discontinued. *Cf. United States v. Iannelli*, 477 F.2d 999, 1002 (3d Cir. 1973) ("The sufficiency of these reports was a matter for the supervising judge, and the breadth of his discretion must be viewed in light of the fact that he could under 18 U.S.C. § 2518(6) have dispensed with progress reports entirely."). Moreover, even if the district court had found that the government failed to properly comply with its progress report order, suppression of the wiretap evidence is not the automatic remedy, and such a decision is similarly within the district court's discretion. *See United States v. Scafidi*, 564 F.2d 633, 641 (2d Cir. 1977) ("While these reports should have been timely filed, the sanction for failure to do so is surely not automatic suppression of the tapes."); *see also DeMonte*, 674 F.2d at 1174 ("Even if the appellant's claim that the reports were not timely filed is true, that does not automatically render the surveillance invalid.").[8] Because the district court was satisfied that the government sufficiently complied with its order, we cannot

---

[8] While defendants are correct that 18 U.S.C. § 2518(10)(a)(iii) provides that "[a]ny aggrieved person . . . *may* move to suppress the contents of any . . . communication intercepted pursuant to this chapter, or evidence derived therefrom, *on the grounds that . . . the interception was not made in conformity with the order* of authorization or approval," nothing in the statute *requires* the district court to grant such a motion. *See Scafidi*, 564 F.2d at 641 (emphasis added). Indeed, the statute goes on to provide that "[t]he judge, upon the filing of such motion by the aggrieved person, *may in his discretion* make available to the aggrieved person or his counsel for inspection such portions of the intercepted communication or evidence derived therefrom as the judge determines to be in the interests of justice." *Id.* § 2518(10)(a) (emphasis added).

say it was an abuse of discretion for the court to deny defendants' motion to suppress the wiretap evidence.


2.   Admission of Wiretap Transcripts

Thomas and Vaughn also challenge the district court's decision to admit transcripts from wiretap surveillance recordings of phone calls in which they discussed and planned their joint purchase and resale of cocaine, and their efforts to convert certain recent shipments of powder cocaine into crack cocaine. They also challenge the district court's decision admitting the transcripts with their names affixed to identify the speakers.

This court has stated that district courts have wide discretion in determining whether to allow juries to use written transcripts as aids in listening to audiotape recordings. *See United States v. Keck*, 773 F.2d 759, 766 (7th Cir. 1985). We have previously permitted transcripts to be admitted at trial and used by the jury during their deliberations when the underlying tapes are actually played during the trial (as was the case here). *See United States v. Magana*, 118 F.3d 1173, 1184 (7th Cir. 1997); *United States v. Crowder*, 36 F.3d 691, 697 (7th Cir. 1994); *United States v. Camargo*, 908 F.2d 179, 183 (7th Cir. 1990); *United States v. Puerta Restrepo*, 814 F.2d 1236, 1242 (7th Cir. 1987). Furthermore, the jury was clearly informed that if there was any variation between the tapes and the transcripts, they were to rely solely on the tapes. *See* Final Instruction No. 46; *see also Crowder*, 36 F.3d at 697; *Puerta Restrepo*, 814 F.2d at 1242.

As for naming Thomas and Vaughn on the transcripts based on DEA Special Agent Michael Kress's identification of their voices, we have also permitted speakers' names to be included on transcripts based on the lay testimony of a

person familiar with the speakers' voices, *see United States v. Briscoe*, 896 F.2d 1476, 1491 (7th Cir. 1990), and Agent Kress identified their voices on the tapes based on his personal interviews with the defendants. Under these circumstances, the district court did not abuse its discretion in permitting their names to be affixed to the transcripts.

### 3. Calculation of Drug Quantity at Sentencing

Thomas and Vaughn also challenge the district court's calculation of drug quantity in determining relevant conduct for sentencing purposes. The district court's relevant conduct finding for Thomas (708 grams of crack cocaine) and Vaughn (672 grams of crack cocaine) was based on the expert testimony of Agent Kress interpreting the drug dealing terminology used on wiretapped telephone conversations in which Thomas instructed Vaughn to cook 18 ounces of powder cocaine into 24 ounces (roughly 672 grams) of crack cocaine and sell each ounce for $1,000. For Thomas, the district court added an additional 36 grams of crack cocaine found by DEA agents when they executed a search warrant at an Evansville residence and subsequently arrested Thomas (who was present at the time of the search). In contrast, Thomas and Vaughn argue that the wiretap surveillance provides evidence showing that they only discussed converting nine grams of powder cocaine into 12 ounces of crack cocaine (or 340 grams).[9]

Relevant conduct determinations are factual findings that we review with great deference to the district court, reversing only in the case of clear error. *United States v. Carmack*, 100 F.3d 1271, 1276 (7th Cir. 1996). "Clear error review

---

[9] At sentencing, defendants argued their relevant conduct was only 9 ounces of crack cocaine.

means that the district court's decision will not be reversed unless after reviewing the entire record we are left with a definite and firm conviction that a mistake has been committed." *Id.* (citing *United States v. Flores-Sandoval*, 94 F.3d 346, 349 (7th Cir. 1996)). For relevant conduct, the government is required to prove the amount of drugs attributable to a defendant by a preponderance of the evidence. *United States v. Ofcky*, 237 F.3d 904, 908 (7th Cir. 2001). Proving relevant conduct by a preponderance of the evidence requires showing that the conduct was "'more likely than not,' i.e., probable or likely rather than just possible." *United States v. Shannon*, 110 F.3d 382, 401 n.10 (7th Cir. 1997) (en banc) (citing *United States v. Saulter*, 60 F.3d 270, 280 (7th Cir. 1995)).

Here, the district court based its relevant conduct finding on wiretap evidence in which Thomas and Vaughn describe drug processing and distributing two different shipments of 18 ounces of cocaine, and evidence against Thomas seized during a valid search. In making its finding, the court specifically disregarded the trial testimony of Donald McGuire, a convicted drug dealer previously arrested by the government during several narcotics transactions, who testified about extensive drug processing and distribution activities he had engaged in with and on behalf of both Thomas and Vaughn. That Thomas and Vaughn claim a different interpretation of the wiretap evidence does not advance the ball, for under the clearly erroneous standard, "if two permissible views exist, the fact-finder's choice between them cannot be clearly erroneous." *United States v. Hardamon*, 188 F.3d 843, 848 (7th Cir. 1999) (citation and quotation marks omitted).

Thomas and Vaughn's argument is further undermined by the fact that the 12 ounces of crack cocaine figure they suggested (based on cooking 9 ounces of powder cocaine) fails to account for the other 9 ounces of powder cocaine that they admit to discussing in the same conversation but

which they claim they did not intend to cook into crack cocaine. *See* Appellants' Brief at 15. Nor does their figure account for the additional 18 ounces of powder cocaine, which they concede there was evidence that they had acquired sometime before November 10 (nine ounces of which was ultimately seized by agents after an individual, Golden Sutton, threw it out a car window when he was stopped by police shortly after purchasing it from Thomas). *See* Appellants' Brief at 15-16. Under these circumstances, we cannot find clear error in the district court's relevant conduct determination.

C.   Admission of Thomas's Prior Conviction

Thomas also challenges the use at sentencing of one of his prior state convictions that was not disclosed by the government before trial in response to his Federal Rule of Criminal Procedure 16 request for pretrial disclosure of his criminal record. Prior to trial, Thomas requested disclosure of his prior criminal record and the government supplied the National Crime Information Center (NCIC) report that it had at that time, which included two prior misdemeanor convictions in Indiana but omitted another in Ohio. Given his criminal history Thomas would have qualified under the safety valve provisions of the guidelines for a sentence reduction. However, in advance of sentencing, the United States Probation Department provided its Presentence Investigation Report (PSR) which included the Ohio conviction. Thomas argues that because he did not receive pretrial notice of the Ohio conviction, it should have been excluded for sentencing purposes as a sanction under Rule 16(d)(2) and his criminal history level should be lowered.

Federal Rule of Criminal Procedure 16 provides that "[u]pon a defendant's request, the government must furnish the defendant with a copy of the defendant's prior criminal record that is within the government's possession, custody,

or control if the attorney for the government knows—or through due diligence could know—that the record exists." Fed. R. Crim. P. 16(a)(1)(D). One reason defendants seek pretrial disclosure of their prior criminal record is so they may attempt to take advantage of the "safety valve" provisions in the Sentencing Guidelines, *see* U.S.S.G. § 5C1.2,[10] by reducing their criminal history points through post-conviction relief on previous sentences (as Thomas did with one of his Indiana convictions).

While the government admittedly has no explanation for why the Ohio conviction was not in the pretrial report it provided Thomas, Rule 16 does not mandate that the district court must suppress or exclude the prior conviction as a sanction for a Rule 16 violation. Indeed, Rule 16(d)(2) provides that the district court "'may,' but is not required to, impose sanctions including ordering disclosure, granting a continuance, prohibiting admission of the evidence, or any other response deemed necessary. This rule does not require the suppression of evidence for a discovery violation. These sanctions are left to the discretion of the court, and we will not second guess its decision." *United States v. Jackson*, 51 F.3d 646, 651-52 (7th Cir. 1995) (citations

---

[10] The guidelines allow a defendant to be sentenced according to the applicable guideline range, without regard to any statutory minimum sentence, if the defendant meets five criteria listed in § 5C1.2: (1) the defendant must not have more than one criminal history point; (2) the defendant must not have used violence or credible threats of violence or possessed a firearm or other dangerous weapon in connection with the offense; (3) the offense must not have resulted in death or serious bodily injury to any person; (4) the defendant must not have been an organizer, leader, manager, or supervisor of others in the offense; and (5) the defendant must have truthfully provided the government with all information and evidence he had concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan.

omitted); *see also United States v. De La Rosa*, 196 F.3d 712, 716 (7th Cir. 1999); *United States v. Salerno*, 108 F.3d 730, 743 (7th Cir. 1997).

Moreover, this court will not disturb a ruling on a motion for Rule 16 sanctions absent a showing of prejudice, *see id.*, and a defendant is prejudiced under Rule 16 only when he is unduly surprised and lacks an adequate opportunity to prepare a defense. *See id.* at 744. Here, we cannot say Thomas was prejudiced by the government's failure to disclose his Ohio conviction before trial, because defense counsel acknowledges that he received the PSR well in advance of sentencing. Under these circumstances, he could (and should) have, pursuant to Rule 16, asked for a continuance of the sentencing procedures in order to seek post-conviction relief for the Ohio conviction. *See* Fed. R. Crim. P. 16(d)(2)(b).[11] Accordingly, we do not find that the district court abused its discretion in denying Thomas's motion to exclude the prior conviction for sentencing purposes.

## CONCLUSION

---

[11] We are not persuaded by defense counsel's argument that he could not pursue post-conviction relief for Thomas's Ohio conviction because he is not licensed to practice law in Ohio. Counsel did not explore or raise with the district court a request for leave to obtain *pro hac vice* status in Ohio or to otherwise retain a possible federal defender to represent his client in that state. He asserts that the district court's inexplicable denial of his costs in pursuing successful post-conviction relief for one of Thomas's Indiana convictions precluded him from pursuing leave to pursue post-conviction relief for the Ohio conviction. If counsel had at least attempted to obtain such leave, and his request had been denied, he might have had a more viable prejudice argument on appeal.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

A true Copy:

        Teste:

                     _____
                     *Clerk of the United States Court of*
                     *Appeals for the Seventh Circuit*