In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-2458

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BRIAN DODDS, a/k/a
HORACE B. WILSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 06 CR 280—**Charles N. Clevert, Jr.**, *Judge.*

ARGUED DECEMBER 1, 2008—DECIDED JUNE 24, 2009

Before BAUER, ROVNER and EVANS, *Circuit Judges.*

ROVNER, *Circuit Judge.* A jury convicted Brian Dodds, whose legal name is Horace Wilson, of unlawfully possessing a firearm in or affecting commerce following a felony conviction. *See* 18 U.S.C. § 922(g)(1). Dodds appeals, arguing that the district court erred in allowing the government to elicit testimony concerning his legal name and in permitting one of the officers who arrested him to recount the physical description given by an

unidentified witness who had seen Dodds pointing a gun at people. Because neither evidentiary ruling was an abuse of discretion or a violation of his constitutional rights, we affirm Dodds' conviction.

## I.

At approximately 10:15 on the evening of November 10, 2005, Milwaukee's emergency services center received a 911 call reporting "shots fired" in the vicinity of 37th and Galena Streets. Police officer Timothy Koestering was among the police officers dispatched to that location to investigate. Seeing nothing upon his arrival, Koestering pulled his vehicle over and contacted the 911 caller to verify the report. Just after he finished that call, an unidentified person driving a red Dodge pulled alongside of Koestering's vehicle and told him that he had seen an African American male, wearing a black jacket and a black knit cap, pointing a gun at people two blocks away at the corner of 35th and Galena.

Koestering and his fellow officers proceeded at once to 35th and Galena. Officer James Williams and his partner, Officer Tony Knox, were among the first to arrive. As they pulled up, Williams saw a man matching the description given Koestering emerge from the gangway between two houses and walk into the Edge Sports Bar on the corner. Williams and Knox followed the man into the bar and asked him to step outside. They patted him down but did not discover a weapon on his person. When they asked the man to identify himself, he gave his name as Brian Dodds.

Koestering placed Dodds in the back of his squad car and then used the vehicle's computer interface to see if there were any outstanding warrants for Dodds. He found none.

Meanwhile, Officer Bradley Schlei was searching the gangway from which his colleagues had seen Dodds emerge. He found a Taurus .38-caliber revolver lying on the ground. The gun was left in place until it could be properly photographed by crime scene technicians. Schlei later recovered six spent bullet cartridges from inside of the gun.

After Schlei reported the discovery of the firearm to the other officers and while they were awaiting the arrival of the technicians, Jerry Watkins drove by and informed the officers that he had seen a man with a gun at 35th and Galena earlier that same evening while driving his friend Dawn Woods to work. Although Dodds was sitting in the back seat of Koestering's police car when Watkins spoke to the officers, Williams would later testify that Watkins was too far away from Koestering's vehicle for Watkins to have seen him in the darkness.

At that point Dodds was placed under arrest and taken to a police station. Koestering created a sequential photo array later that evening to show to Watkins and Woods. When they were shown the array early the next morning, Woods, but not Watkins, identified Dodds as the man who had pointed a gun at them. At trial, Woods thought that the weapon recovered from the gangway was the one she had seen Dodds carrying, although she could not be positive.

Dodds was subsequently indicted and tried on the charge that he had unlawfully possessed a firearm following a felony conviction. Watkins and Woods were among the witnesses for the government. Watkins testified that as they drove by the intersection of 35th and Galena en route to Woods' workplace, Dodds had approached their vehicle and shouted something at them. His curiosity piqued, Watkins circled the block and drove back to where Dodds was standing. Woods testified that when Watkins asked Dodds what was going on, Dodds briefly pointed a gun at Watkins. But then, according to Woods, Dodds backed off, put the gun into his pants pocket, and walked away. "I thought you was somebody else," Woods recalled Dodds remarking. R. 74 at 188.

Milwaukee Police Department ("MPD") document examiner Cole Stephens testified that he had examined a latent partial print recovered from the cylinder of the .38-caliber revolver that Schlei had discovered near the intersection of 35th and Galena. In Stephens' opinion, the print matched Dodds' right middle finger.

MPD latent print examiner Douglas Knueppel had compared a set of fingerprints taken from Dodds in connection with his November 2005 arrest with prints on file in Illinois under the name of Horace Wilson. He concluded that the prints were a match and that Dodds and Wilson were the same individual.

Sharon Polakowski, a forensic scientist with the Wisconsin State Crime Laboratory, testified that DNA from three different individuals had been recovered from the

revolver. However, none of the DNA matched that of Dodds.

Dodds took the witness stand in his own defense. He testified that he began using the name Brian Dodds in 2000, after he discovered that the man he had thought was his father—also named Horace Wilson—was not. However, Dodds had never legally changed his name from Horace Wilson. He denied any contact with Watkins and Woods on the evening of November 10, and he also denied having possessed, fired, or brandished the revolver that Schlei discovered in the gangway near 35th and Galena. Dodds testified that he had been at the Edge Sports Bar from 8:30 onward that evening. He said that he was one of seven to ten men with black jackets that the police removed from the bar, placed against a wall, and searched. According to Dodds, the police went down the line of men repeatedly asking an unidentified individual that Dodds could not see, "Is this him?" Dodds also testified that after the police took him into custody and transported him to the police station, he was beaten into unconsciousness after he refused to have his fingerprints electronically scanned. When asked by the government how his print might have gotten onto the revolver that Schlei found, Dodds implied that police might have placed the gun into his hand while he was unconscious.

Police officers Koestering, Williams, Schlei, and Kevin Fellmeth took the stand in rebuttal and denied Dodds' account of the events surrounding his arrest. Koestering, Williams, and Schlei each testified that Dodds was the

only man who had been taken from the bar and that no one, including Dodds, had been shown to a witness for identification at the scene. Fellmeth was present when Dodds was booked at the police station and testified that a struggle occurred when Dodds refused to place his fingers on an electronic fingerprint scanner. Dodds had briefly passed out during the struggle. Fellmeth denied that anyone had hit or punched Dodds or placed a gun in his hand. Koestering, who was also present for the struggle, also denied that anyone had struck Dodds or placed a gun in his hand. Schlei, who had taken the .38-caliber revolver into his custody at 35th and Galena, likewise denied that he or any other officer had placed a gun into Dodds' hand.

The jury convicted Dodds on the felon-in-possession charge. The district court later ordered him to serve a prison term of 120 months, the statutory maximum, which was below the range of 151 to 188 months advised by the Sentencing Guidelines.

## II.

A. Allowing Reference to Dodds' Legal Name

In advance of trial, Dodds asked the court to bar any reference to the fact that his birth name was Horace Wilson. The government at first posed no objection to Dodds' request, but later altered course and opposed the motion. The government attributed its change of heart to its belated discovery that Dodds had never legally changed his name and to its realization that Dodds

had an incentive not to use the name Wilson with the police because he had two prior felony convictions in Illinois under that name, but only misdemeanor convictions in Wisconsin under the name of Dodds. R. 43 at 2-3. The government argued that the defendant's use of a name other than his legal name was proof of his consciousness of guilt, and so evidence that he had a name other than the one he gave to police at the time of his arrest was admissible to put the name "Brian Dodds" in that context. The court denied Dodds' motion in limine on that basis. "[T]here may very well be an innocent explanation for the use of both names, but . . . the Government can also infer that there was consciousness of guilt," the court reasoned. R. 74 at 13.

Dodds contends that the district court's decision to allow reference to the fact that he had a name other than Dodds was an error that prejudiced him. He argues that although he had not legally changed his name, he had used the name Brian Dodds for years. Consequently, identifying himself to the authorities as Brian Dodds was consistent with the name he used every day and was not proof that he was conscious of having committed a crime (unlawful possession of a firearm by a felon) and was attempting to evade detection of his offense by giving the police a false name. Allowing reference to the fact that he had a different name prejudiced him in the eyes of the jurors, Dodds contends, because the use of an alias suggests that one has something to hide. He believes that the evidence was irrelevant and inadmissible under Evidentiary Rules 401 and 402, and in any case

should have been excluded as unduly prejudicial pursu-
ant to Rule 403.

For several reasons, we reject the notion that the district
court abused its discretion in denying Dodds' motion in
limine. First, whatever name Dodds was using, and for
whatever reason, Horace Wilson was his legal name.
That name was a matter of public record, he had felony
convictions under that name, and one may expect that
one's legal name, like other matters of record (one's
age, residence, and place of employment), will be the
subject of inquiry at trial. The use of a name other than
one's legally-recognized name may or may not be indica-
tive of wrongdoing, but reference to one's legal name
is hardly unusual or unexpected, particularly in a legal
proceeding. It is not as if Dodds were in the witness
protection program. As for the probative value of the
fact that he was using a name other than his legal
name, granted, Dodds was not a name that he made up
on the spot when the police hauled him out of the bar:
he had misdemeanor convictions under that name,
which tends to confirm his own account that he had
used that name for some time. Still, we take the govern-
ment's point: knowing that he had a felony conviction
under the name of Wilson, which precluded him from
carrying a firearm, he might have used the name Dodds
in part to disguise his firearms disability. In any case, we
doubt very much that Dodds was unduly prejudiced by
reference to his legal name. The references were not
protracted, the government did not mention it in its
closing arguments, and there was a great deal of evidence

pointing directly to his culpability. There was no error, and certainly no prejudicial error, in permitting reference to the name Horace Wilson.[1]

B.   Testimony Concerning Description Given By Unidenti-
      fied Witness

As we have noted, Officer Koestering testified at trial that when officers arrived at the intersection of 37th and Galena, an unidentified individual told the officers that a black man in a black jacket and black cap was pointing a gun at people two blocks away at 35th and Galena. Because that individual was never identified and did not testify at trial, Dodds contends that allowing Koestering to repeat his statement was a violation of his rights under the confrontation clause of the Sixth Amendment. *See Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004).

We conclude for two reasons that the admission of the witness's out-of-court statement did not violate Dodds' confrontation rights. First, *Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266 (2006), holds that an out-of-court statement implicating the defendant may be admissible as a non-testimonial statement when the statement was elicited for the primary purpose of helping the police

---

[1] This is not a case like *United States v. Williams*, 739 F.2d 297, 299-301 (7th Cir. 1984), in which we concluded that reference to the defendant's nickname "Fast Eddie," a name that is suggestive of bad moral character, was unduly prejudicial.

resolve an ongoing emergency rather than to determine what had occurred in the past. *Id.* at 822, 827-28, 126 S. Ct. at 2273-74, 2276-77. In this case, the police were responding to a 911 call reporting "shots fired" and had an urgent need to identify the person with the gun and to stop the shooting. The witness's description of the man with a gun was given in that context, and we believe it falls within the scope of *Davis*. Second, the problem that *Crawford* addresses is the admission of hearsay, which is, of course, an out-of-court statement admitted for its truth. *E.g.*, *United States v. James*, 487 F.3d 518, 524-25 (7th Cir. 2007). The witness's statement to Koestering was not admitted for its truth—that the witness saw the man he described pointing a gun at people—but rather to explain why the police proceeded to the intersection of 35th and Galena and focused their attention on Dodds, who matched the description they had been given. This was a permissible, non-hearsay purpose. *United States v. Breland*, 356 F.3d 787, 792 (7th Cir. 2004).

The district court did not give a limiting instruction advising the jury not to consider the witness's statement to Koestering for its truth but solely as an explanation for why Koestering and the other officers approached and questioned Dodds. But the court was not asked to give such an instruction, the lack of such an instruction has not been raised on appeal, and, in any case, we doubt that Dodds was prejudiced by the lack of a limiting instruction. The reference to the witness's statement was brief, it was not mentioned in closing argument, and there was ample direct evidence, including in

particular the testimony of Watkins and Woods, that Dodds was seen with a gun, and of course the fingerprint evidence indicating that he had held the gun. *See id.*

## III.

The district court did not abuse its discretion in allowing testimony concerning Dodds' legal name or the out-of-court statement to a police officer describing a man the witness had seen pointing a gun at individuals. We therefore AFFIRM Dodds' conviction.