# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 03-3298

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

SHERMAN F. JAFFE,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 CR 576—**Matthew F. Kennelly**, *Judge.*

_____

ARGUED SEPTEMBER 9, 2004—DECIDED NOVEMBER 1, 2004

_____

Before EASTERBROOK, EVANS, and SYKES, *Circuit Judges.*

EVANS, *Circuit Judge.* With personal and financial problems mounting, attorney Sherman Jaffe admittedly showed poor judgment when he financed the purchase of a Chicago property with a fraudulently obtained mortgage loan of more than $60,000 for a property worth just $25,000. The key question in this case is whether Jaffe, who specialized in real estate law for some 30 years and had a real estate broker's license, merely showed bad judgment by blindly taking the advice of a client, Theresa Holt, or whether his mistake was knowingly participating in Holt's scheme to defraud a mortgage lender. Because we find sufficient evi-

dence to support the jury's conclusion that Jaffe knew what he was getting into, we affirm his conviction.

In 1996, Holt, acting as president of Share Development, agreed to buy approximately 200 properties for $25,000 each, though the actual value of the properties varied. Holt then obtained inflated appraisals for the properties and re-sold nearly 100 of them at inflated prices. Jaffe bought one of those properties in 1997: Holt purchased it for $25,791.50 and Jaffe bought it less than 2 months later for $77,000.

The government claims that Holt enticed buyers by sell-ing properties requiring no down payments and providing buyers with seller carry-back loans that they did not have to repay, which had the effect, of course, of reducing the sales price. Holt also promised payments of $3,000 to $4,000 per property to her buyers. Mortgage lenders were not told that no money down was required, but they were led to believe that the seller carry-back loans were on the up-and-up.

Jaffe represented Holt in various real estate deals over a 10-year period before Holt offered to sell Jaffe a property at 5641 South Union in Chicago. Jaffe, who was living in the basement of his mother's house, admits that he was suffering from financial and personal troubles at the time.

After learning about the property from Holt, Jaffe went to see it but was unable to look inside because the tenants at the time had barred the windows and would not answer the door. Jaffe did get a peak at the basement and conceded at trial that "[i]t wasn't too good." Still, Jaffe agreed to purchase the property for $77,000. Holt was to pay the closing costs and secure a mortgage for Jaffe.

As most borrowers do, Jaffe completed a Uniform Resi-dential Loan Application (URLA) containing information about his income and assets, which was submitted to National Lending Center, Inc. for use in determining whether Jaffe qualified for a mortgage. The government claims the URLA, which Jaffe signed, included fraudulent misrepresentations

concerning his assets, the money used as a down payment, and whether Jaffe intended to occupy the property as his primary residence. Jaffe also signed a HUD-1 form containing false information about cash Jaffe used to close the sale.

Because the tenants did not immediately vacate the South Union property, Jaffe did not get inside until almost 3 months after the closing. When he finally went in, he discovered that there was no heater or toilet, the floors and walls were damaged, and there were problems with the plumbing and electrical wiring. Jaffe claims that it was only at this point that he realized the property was not worth the $77,000 purchase price.

Jaffe was indicted in 2002 on one count of wire fraud. A superseding indictment returned 2 weeks later re-alleged count one but added 78 counts charging additional buyers and Holt for their roles in various fraudulent transactions. Holt, the mastermind of the scheme, is apparently a fugitive.

After a 6-day trial for Jaffe and another defendant, Leonard Moore, the jury found Jaffe guilty of wire fraud. He was sentenced to 9 months in prison. Although he has completed his sentence, Jaffe appeals in an attempt to clear his name, claiming he was prejudiced at the trial by a variance between his indictment for participation in an individual scheme and the evidence of Holt's many fraudulent transactions. He also argues that the evidence was not sufficient to support his conviction and that the district court erred in giving an "ostrich" instruction. He also challenges certain comments made by the prosecution during the trial.

On the variance issue, Jaffe argues that the jury could have been swayed by testimony of multiple schemes to defraud mortgage lenders, even though he was only charged in connection with one scheme. Accordingly, he claims, the district court should have separated his trial from Moore's

or should have given a jury instruction warning against convicting him based on evidence of the similar schemes. Jaffe admits that we can reverse his conviction on the basis of this argument only if we find plain error.

To support his claim, Jaffe points to *Kotteakos v. United States*, 328 U.S. 750 (1946), in which the Supreme Court reversed a conviction for conspiracy to use fraudulent statements to obtain loans. Although some of the facts of the two cases are similar, the crucial difference is that the trial court there instructed the jury to convict if it found the defendant committed a crime other than the one contemplated in the indictment. Here, however, the jury convicted Jaffe of the very charge leveled in the indictment: that he "participated in a scheme to defraud and to obtain money and property . . . from a mortgage lender, National Lending Center, Inc., by means of materially false and fraudulent pretenses, representations, promises and material omissions . . . ." Jaffe was free to argue at trial that the government produced evidence only of Holt's larger scheme, not of Jaffe's involvement in it. If the jury had agreed, Jaffe would have been acquitted. Since it did not, Jaffe's claim of variance is simply a claim that the evidence was not sufficient to support his conviction.

"We will overturn a conviction based on insufficient evidence only if the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Curtis*, 324 F.3d 501, 505 (7th Cir. 2003). As a result, Jaffe "faces a steep uphill battle," *see United States v. Graham*, 315 F.3d 777, 781 (7th Cir. 2003), one, as it turns out, he cannot win.

To prove Jaffe guilty of wire fraud, the government had to show that he knowingly participated in a scheme to defraud and that a wire was used in furtherance of the scheme. *United States v. Tadros*, 310 F.3d 999, 1006 (7th Cir. 2002). At trial, the government presented overwhelming evidence

of Holt's scheme to trick mortgage lenders into financing sales of properties, including the South Union property, at greatly inflated prices. The evidence also established that proof of Jaffe's cash necessary to close (a copy of an $8,489 cashier's check) was faxed from Chicago to National Lending in Florida, thus satisfying the use of a wire element. So the case turned on whether the evidence was sufficient to prove that Jaffe was a willing participant in the scheme. But Jaffe claims that he could not have intended to defraud the lender because he did not know anything about Holt's scheme at the time he agreed to the sale. Rather than a participant, he says, he was actually a victim of Holt's scheme because he had to take out a $64,000 mortgage for a property worth just $25,000.

Despite Jaffe's cries of ignorance, the jury had plenty of reasons to believe that he knew of Holt's scheme and willingly participated in it. Evidence suggested that Jaffe and other buyers did not have to put any money down and received seller carry-back loans that did not have to be repaid. More significantly, Jaffe, as we noted, was a real estate attorney with more than 30 years experience. The jury reasonably could have concluded that, with his background, Jaffe would have insisted on seeing the Union Street property if the deal was legitimate, particularly after discovering that the basement "wasn't too good." In addition, Jaffe admitted that he thought the transaction might be fraudulent, but he could not remember whether he came to that realization before the deal closed. Put together, the evidence supported the jury's determination that Jaffe realized the transaction was fraudulent before the closing. *See United States v. Dumes*, 313 F.3d 372, 382 (7th Cir. 2002) (noting that the government can rely on circumstantial evidence to prove intent to commit a crime).

Jaffe also argues that the evidence was insufficient to support the jury's conclusion that he made false representa-

tions and that he intended to use wires in furtherance of a scheme. At trial, the government argued that Jaffe falsely represented that he had $100,000 in personal property and that he intended to occupy the Union Street property as his primary residence. Jaffe claims that his interest in his mother's house and a condominium were personal property, but evidence introduced at trial showed that Jaffe had simultaneously listed and treated his interests in the properties as real estate. More significantly, the fact that Jaffe bought the property without ever looking inside casts doubt on his claim that he planned to make it his primary residence. With respect to the use of a wire, Jaffe could have foreseen that the fax would be sent to National Lending. *See American Auto. Accessories, Inc. v. Fishman*, 175 F.3d 534, 542 (7th Cir. 1999) (holding that a defendant need only reasonably foresee the use of a wire).

The remainder of Jaffe's claims can be disposed of quickly. Jaffe contends that the district court erred in giving an "ostrich" instruction which allowed the jury to convict him if it found that he "had a strong suspicion that things were not what they seemed or that [he] had withheld some important facts, yet shut [his] eyes for fear of what [he] would learn . . . ."

An ostrich instruction is appropriate when a defendant "claims a lack of guilty knowledge and there are facts and evidence that support an inference of deliberate ignorance." *United States v. Craig*, 178 F.3d 891, 896 (7th Cir. 1999). At trial, FBI Special Agent Bruce Burr testified that Jaffe said he knew the transaction was fraudulent at a certain point and that he (Jaffe) said he "agreed that he had 'stuck his head in the sand.'" Apart from a trial involving an actual ostrich, it's hard to imagine a case where an ostrich instruction is more appropriate than one, as here, where the defendant acknowledges "sticking his head in the sand."

Jaffe also argues that we should overturn his conviction because he was prejudiced by what he claims were inappro-

priate questions and comments made by the government during trial. During his cross-examination of Jaffe, the prosecutor asked about his request to the FBI that he be viewed as an unindicted coconspirator. Then, during closing arguments, the prosecution told the jury: "Mr. Jaffe would come to Court, take an oath, use his dead mother to lie to you in this case. Do you think for a minute he would not hesitate to lie at [his] real estate closing . . . ?" Jaffe claims the comments improperly influenced the jury. But the district court did not abuse its discretion in determining that the coconspirator question was not unfairly prejudicial, and a prosecutor can comment on the credibility of a witness during his closing argument. *See United States v. Morgan*, 113 F.3d 85, 89 (7th Cir. 1997). In addition, we cannot find any evidence that the prosecutors' statements had any effect on the jury. In fact, the district court warned the jury that, "[t]he lawyers' statements to you are not evidence," and, as we have already said, the evidence was more than sufficient to support the jury's conclusion. The judgment of the district court is AFFIRMED.

A true Copy:

      Teste:

                          _____

                          *Clerk of the United States Court of*
                                      *Appeals for the Seventh Circuit*