NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 4, 2013[*]
Decided November 4, 2013

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

Nos. 12-2841 & 12-2842

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeals from the United States District Court for the Northern District of Indiana, South Bend Division. |
| *v.* | Nos. 3:10cr120-001 and 3:10cr126-002 |
| JEREMIE SHENEMAN, *Defendant-Appellant.* | Jon E. DeGuilio, *Judge.* |

**O R D E R**

Jeremie Sheneman, a loan officer, was tried for and convicted of participating in two wire-fraud schemes, *see* 18 U.S.C. § 1343, and was sentenced to concurrent 120 months' sentences. The two schemes were prosecuted under two case numbers. Sheneman has appealed the consolidated judgment from those cases; we affirm.

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. The appeals are thus submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

In the first scheme, Sheneman collaborated with his father to broker the sale of 60 residential properties, lie to the buyers and lenders about the properties' values and the buyers' creditworthiness, and then pocket the sales' profits for themselves. As we recounted in the father's separate appeal, *United States v. Sheneman*, 682 F.3d 623 (7th Cir. 2012), the properties, which father and son falsely touted as reliable sources of rental income, were plagued with costly, undisclosed problems such as faulty plumbing, termite damage, or leaky roofs, and no tenants.

The first scheme exploited four unsophisticated buyers: two foreigners on student visas, an electrician, and a maintenance worker. Sheneman prepared loan applications for them by overstating their incomes, inflating the balances of their bank accounts, and forging the buyers' signatures, among other lies to the lenders. Unaware of the buyers' real means or the properties' true values, lenders financed the purchases, wiring the purchase prices at the closings. The majority of the proceeds—totaling $3.1 million—went into the father's bank account, but $360,000 went directly to Sheneman. The father also transferred another $646,000 to him, according to a forensic auditor's testimony. The buyers could not make the hefty mortgage payments on many of the dilapidated properties so they went into foreclosure and were sold at a loss. A jury later convicted Sheneman and his father of this wire-fraud scheme.

The second scheme involved Sheneman's grandmother. Sheneman arranged for her to buy real estate properties by submitting fraudulent loan applications on her behalf. Among other lies, the applications dramatically overstated her income and misrepresented the intended use of some of the properties to make the loans appear less risky. Sheneman secured more than $4 million from this scheme, of which he was also convicted. Although Sheneman has appealed his conviction on this second scheme, his opening brief advances no arguments against it, so we address it no further.

Sheneman challenges only the sufficiency of the evidence for the conviction on the first scheme. To prove wire fraud, the government needed to show that Sheneman intentionally participated in a scheme to defraud and used wire communications to further the scheme. *United States v. Westerfield*, 714 F.3d 480, 484–85 (7th Cir. 2013); *United States v. Roberts*, 534 F.3d 560, 569 (7th Cir. 2008). Because Sheneman did not move for a judgment of acquittal, only a manifest miscarriage of justice would justify reversal—we have called this "perhaps the most demanding standard of appellate review." *United States v. Rea*, 621 F.3d 595, 601–02 (7th Cir. 2010); *United States v. Turner*, 551 F.3d 657, 662 (7th Cir. 2008). Here the government submitted ample evidence of wire fraud: Sheneman and his father provided to the lenders fraudulent applications

seeking funds from them to finance purchases, and the lenders financed those purchases by wiring the requested funds to both Sheneman and his father. These two facts alone gave the jury sufficient proof of wire fraud. *See United States v. Jaffe*, 387 F.3d 677, 680–81 (7th Cir. 2004); *United States v. Berkley*, 333 F.3d 776, 780 (7th Cir. 2003).

Sheneman insists that he could not have committed wire fraud because, like the defendant in *United States v. Walters*, 997 F.2d 1219 (7th Cir. 1993), he asserts that he did not receive any disbursed funds. Walters was a professional sports agent who signed college football players to contracts (making them ineligible to play in college) while the players continued to receive athletic scholarships. Because Walters himself obtained no scholarship money, we reversed the conviction for mail fraud. 997 F.2d at 1224–27. But the evidence in Sheneman's case supplies what was missing in *Walters*. First, testimony and documents at trial showed that Sheneman *did* receive $360,000 directly from the property sales, plus more than $600,000 his father gave him. Second, even if Sheneman's father had gotten everything and Sheneman nothing, the evidence would be sufficient because, unlike Walters, Sheneman intentionally participated in a scheme to defraud using the wires to enrich at least one of the schemers—the essence of wire fraud, *Jaffe*, 387 F.3d at 680. That is why in *Walters* we expressly left open the question whether Walters could have been prosecuted for participating in a fraud scheme *with* the football players as co-schemers. 997 F.2d at 1227.

Sheneman also asserts that evidence was insufficient because wiring the money was not essential to the fraud schemes. But as we explained to Sheneman's father in his appeal, the wire transfers need only have been foreseeable. *Sheneman*, 682 F.3d at 629–30. Sheneman expected that the lenders would furnish the funds for the property sold; that made the wire transfers foreseeable. *See United States v. Adcock*, 534 F.3d 635, 640–41 (7th Cir. 2008); *United States v. Ratliff-White*, 493 F.3d 812, 819 (7th Cir. 2007). Moreover, Sheneman was a loan officer; someone like him familiar with the financing of real-estate transactions would know by his experience that the lenders would transfer the money by wire. *See Sheneman*, 682 F.3d at 630.

Sheneman raises other arguments in his scattershot reply brief, but because he raises them there for the first time and gives the government no chance to respond, they are all waived. *United States v. Roberts*, 534 F.3d 560, 568 n.5 (7th Cir. 2008); *United States v. Nonahal*, 338 F.3d 668, 671 n.1 (7th Cir. 2003) (enforcing rule against pro-se appellant).

**AFFIRMED**.